**FARBER v. UNITED STATES.**
No. 9305.

Circuit Court of Appeals, Ninth Circuit.
July 27, 1940.

Rehearing Denied Sept. 16, 1940.

Writ of Certiorari Denied Nov. 25, 1940.

See 61 S.Ct. 173, 85 L.Ed. ——.

**6**

Chellis M. Carpenter, of San Francisco, Cal., for appellant.

Frank J. Hennessy, U. S. Atty., and W. E. Licking and Thos. C. Lynch, Asst. U. S. Attys., all of San Francisco, Cal., for appellee.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

An indictment against Gus Farber, a diamond and jewelry merchant of San Francisco, charged in count one thereof that on or about February 21, 1939, he willfully, unlawfully, and knowingly ac-- quired thirteen genuine $20 gold coins of

the United States without a license in accordance with the President's Order No. 6260, as amended, 12 U.S.C.A. § 95 note,[1] which Order was authorized by the Trading with the Enemy Act of 1917, 40 Stat. 411, 415, as amended March 9, 1933, 12 U.S.C.A. § 95a. He was convicted and appeals to this Court.

The evidence is to the effect that a man named Posner, acting under instructions from a man named Anolik, contacted appellant sometime in September or October, 1938, and the matter of purchasing gold coins from appellant was discussed between them at the time. Operatives of the secret service of the Government had acquired some knowledge of the matter and informed Posner of this fact. Posner proceeded to negotiate with appellant relative to such purchase, keeping the operatives acquainted with its progress. The consummation of a purchase of thirteen gold coins was completed on or about February 21, 1939.

Appellant admits that he bought and sold the thirteen coins in question, but contends he had the legal right to do so without a license under Section 20 of a regulation of the Secretary of the Treasury, as approved by the President, and issued on January 31, 1934. This regulation was issued under authority of the Gold Reserve Act of 1934, 48 Stat. 337, and prior to the act charged in the indictment as a crime.

Both of the statutes out of which these regulations spring cover the right to the possession, acquisition, et cetera, of gold and gold coin, and the later enacted statute does not repeal the earlier one in total, but its text provides that, "All Acts and parts of Acts inconsistent with any of the provisions of this act [sections 311a, 316a, 316b, 405a, 448–448e, 734a, and 734b of this title] are hereby repealed". Section 17. Thus the two statutes stand each effective to the full extent of its provisions excepting only where there exists an unadjustable inconsistency, in which particular, of course, the later enacted statute governs. An analysis of the two statutes and the orders thereunder will be helpful.

The Trading with the Enemy Act was enacted October 6, 1917, about the time this country engaged in the World War.

1 Executive Order No. 6260 was promulgated on August 28, 1933, and amended on January 12, 1934, by Executive Order No. 6556. For brevity throughout this opinion we have referred to Executive Order No. 6260 as amended by Order No. 6556, as "Executive Order 6260".

This Act, as subsequently amended, among other things, provided [§ 5 (b) ]: "That the President may investigate, regulate, or prohibit, under such rules and regulations as he may prescribe, by means of licenses or otherwise, any transactions in foreign exchange and the export, hoarding, melting, or earmarkings of gold or silver coin or bullion or currency * * *" and also provided: "* * * That whoever shall willfully violate any of the provisions of this Act or of any license, rule, or regulation issued thereunder, and whoever shall willfully violate, neglect, or refuse to comply with any order of the President issued in compliance with the provisions of this Act shall, upon conviction, be fined not more than $10,000, or, if a natural person, imprisoned for not more than ten years; or both * * *".

Upon such authority the President issued his Executive Order 2039 [Bank Holiday] under date of March 6, 1933, 12 U.S.C.A. § 95 note. Three days thereafter the Trading with the Enemy Act was amended by an Act entitled "An Act To provide relief in the existing national emergency in banking, and for other purposes". 48 Stat. 1.

This Act approved and confirmed the Bank Holiday order of the President, left the penalty unchanged, and amended the substantive part of § 5 (b) as above quoted to read as follows: "(b) During time of war or during any other period of national emergency declared by the President, the President may, through any agency that he may designate, or otherwise * * * regulate, or prohibit, under such rules and regulations as he may prescribe, by means of licenses or otherwise, any transactions in foreign exchange, transfers of credit between or payments by banking institutions as defined by the President, and export, hoarding, melting, or earmarking of gold or silver coin or bullion * * *".

By a comparison of these two sections it is clear that the latter is but a clarification of the subject matter of the former, together with the additional application of a national emergency clause independent of actual war. It was under the latter that the President issued his Executive Order 6260, which so far as is here concerned is as follows: "No person other than a Federal Reserve bank shall after the date of this order acquire in the United States any gold coin * * except under license therefor issued pursuant to this Executive order, provided * * * that collectors of rare and unusual coin may acquire from one another and hold without necessity of obtaining a license therefor gold coin having a recognized special value to collectors of rare and unusual coin * * *". Section 4. The penalty as included in the Act of $10,000 with or without imprisonment for not to exceed ten years, is also set out in the Order.

It is clear under the terms of this Order that one who acquires gold coin without a license has violated the Act unless (a) he is a collector of rare and unusual coin, (b) he has acquired the coin from another such collector, (c) the coin acquired has a recognized special value to collectors of rare and unusual coin.

In 1934 the Congress enacted the Gold Reserve Act of 1934, 48 Stat.L. 337, Title 31 U.S.C.A. §§ 441–443. This Act to a large extent consists of amendments to the Federal Reserve Act. It covers some but by no means all of the subject matter of the Trading with the Enemy Act and mainly treats of the Federal Reserve and the government of the Federal Reserve Banks. However, it contains the following:

"Sec. 4 [§ 443]. Any gold withheld, acquired, transported, melted or treated, imported, exported, or earmarked or held in custody, in violation of this Act [sections 441 and 442] or of any regulations issued hereunder, or licenses issued pursuant thereto, shall be forfeited to the United States, and may be seized and condemned by like proceedings as those provided by law for the forfeiture, seizure, and condemnation of property imported into the United States contrary to law; and in addition any person failing to comply with the provisions of this Act [said sections] or of any such regulations or licenses, shall be subject to a penalty equal to twice the value of the gold in respect to which such failure occurred.

* * * * * *

"Sec. 17 [§ 448e]. All Acts and parts of Acts inconsistent with any of the provisions of this Act [sections 311a, 316a, 316b, 405a, 448–448e, 734a, and 734b of this title] are hereby repealed."

For clarity we shall herein generally refer to the Trading with the Enemy Act, as amended, out of which the President issues regulations, as the First Act, and to the Gold Reserve Act of 1934, out of which the Secretary of the Treasury with the President's approval issues regulations, as the Second Act.

Acting under the authority of the Second Act the Secretary of the Treasury under the President's approval issued the following order:

"Sec. 20. Rare Coin. Gold coin of recognized special value to collectors of rare and unusual coin * * * may be acquired and held * * * without the necessity of holding a license therefor."

█ It is appellant's claim that the Gold Reserve Act or Second Act, with its Section 4, together with the Secretary of the Treasury's Regulation § 20, acts to repeal all that is contained in the Trading with the Enemy Act, or First Act, together with the President's Executive Order 6260 which treats of acquiring and withholding gold from the Government. We think appellant is in error.

In the First Act only collectors could deal with collectors in rare and unusual coins without a license and then only because of the rare and unusual qualities of the coins and their recognized special value. There is no provision in the Second Act that those dealing in rare and unusual coins without a license need be collectors. Still, however, the dealing must be because of the qualities of the coins and not because of the bullion value therein. Appellant claims that this repeals or at least amends the First Act. We are not in accord with this conclusion, although it is worthy of note in passing that the trial court apparently considered this difference in the statutes to work an amendment to the First Act. For, although he sentenced under the penal provisions of the First Act, he instructed the jury as though the privilege of dealing in rare and unusual coins was governed by the terms of the Second Act. He instructed as follows: "* * * if * * * the gold coins * * * were acquired because of this recognized special value to collectors of rare and unusual coin * * you shall acquit the defendant." There is nothing in this instruction to the effect that those acquiring the coins or those from whom they were acquired need be collectors of rare and unusual coins, as is required in the First Act.

Appellant then follows down the Second Act to the provision that the possessor of gold coin must forfeit it or maybe pay twice its value to the Government, and claims that such forfeiture and double value payment is the only penalty for the violation of either or both Acts. The contention is not sound.

The two Acts are possessed of marked differences. The First Act under which Order 6260 was issued by the President provides that one who does certain prohibited acts willfully and unlawfully shall be meted out certain punishment. The Second Act does not touch upon the subject of personal punishment for the willful and unlawful acquiring, withholding, et cetera of gold. It turns its attention to the practical matter of getting the gold into the possession of the United States. It warns everyone not to be careless about the matter, and if one is careless and does not comply with the gold Acts, even though he is innocent of any intentional or willful wrongdoing, still he must forfeit the gold to the Government and possibly he may be subject to a money payment of twice the gold's value.

█ We hold that the passage of the Second Act did not effect a repeal of the prohibition detailed in the First Act and did not effect a repeal of the penalty provided in the First Act.

█ Appellant claims that the indictment does not state a crime and that the demurrer to the indictment for that reason should have been sustained. Two different theories are advanced. The first is based upon the premise that Executive Order 6260 and the Statute under which it was issued were repealed by the Second Act above referred to. Our discussion above disposes of this theory.

Appellant advances another theory, however, upon which he claims the indictment failed to state a public offense. That is, that it does not appear from the indictment whether or not the coins alleged to have been acquired were coins having a recognized special value to collectors of rare and unusual coin.

Executive Order 6260 treats of the acquisition of gold coin, gold bullion, gold

certificates and specified gold $2.50 pieces. Since the indictment concerns only the acquisition of gold coin in $20.00 pieces, we may dismiss and eliminate all reference to the subject of gold bullion, gold certificates and gold $2.50 pieces.

The Order as amended is effective after the date of the amendment, and the indictment is subsequent to such date. The Order makes exceptions to Federal Reserve Banks, and since it is plain from the terms of the indictment that nothing regarding such exception is involved, we may eliminate all reference to Federal Reserve Banks. The indictment shows on its face that the acts complained of occurred in the United States, so we may eliminate all consideration of place. The Order then reads: "No person * * * shall * * * acquire * * * any gold coin * * * except under license therefor issued pursuant to this Executive order * * * provided * * * that collectors of rare and unusual coin may acquire from one another and hold without necessity of obtaining a license therefor gold coin having a recognized special value to collectors of rare and unusual coin * *".

The indictment, stripped of all verbiage unnecessary for our present purposes, reads as follows: "Gus Farber * * * willfully, unlawfully, and knowingly acquired certain gold coin, in quantity particularly described as thirteen genuine $20.00 gold coins * * * not having * * * a license, theretofore issued * * [pursuant to Executive Order #6260 as amended] authorizing said acquisition of said gold coin by said defendant[s] * * as aforesaid."

The contention in short is that for all that is alleged, the thirteen pieces of gold coin acquired may be of the rare and unusual quality and be under the exception as collector pieces, and Farber as a collector may have acquired them from a collector. Hence no offense has been stated. Hereafter wherever we refer to acquiring "rare and unusual coins" we include the phrase "having a special value to collectors".

But appellant misreads the indictment. He reads it as though the clause "not having a license * * * authorizing said acquisition of said gold coin by said defendant[s] as aforesaid" is but a general reference meaning no more than had

the clause read "not having a license authorizing the acquisition of gold coin generally". But the clause is not cast in general terms. It is cast as a definite reference to the act alleged to be unlawful. In fact, to support appellant's interpretation, all that follows the description of the Executive Order might as well not be there, it adds nothing. As it is actually written, it plainly means that appellant acquired certain gold coins; that these gold coins were of such a nature as under the Executive Order could not legally be acquired by one not holding a license so to do. To put it another way, the clause "authorizing said acquisition of said gold coin by said defendant[s] as aforesaid" does not refer to the acquisition of gold coins generally, but to the gold coins the subject of the alleged unlawful act. This being true, the indictment charges that without a license appellant acquired certain gold coins of the description which cannot be legally acquired without a license. See Keck v. United States, 172 U.S. 434, 19 S.Ct. 254, 43 L.Ed. 505, and Dunbar v. United States, 156 U.S. 185, 15 S.Ct. 325, 39 L.Ed. 390.

The appellant claims error in the admission into evidence of a photograph of the thirteen gold coins of the United States in that no corpus delicti of a crime had been proved. The fact that evidence was admitted properly to show the connection between certain gold coin having been acquired by the defendant, and admitted to have been acquired by him, clearly established a corpus delicti sufficient to justify the admission of this evidence.

Appellant assigns as error the refusal of the trial court to give the following proposed instruction:

"You will observe that Section 20 of the Regulations just referred to provides, as far as material, that it is not necessary to hold a license in order to acquire gold coin of recognized value to collectors of rare and unusual coin.

"Therefore, if you should find from the evidence that the gold coin mentioned in the indictment in this case was gold coin of recognized special value to collectors of rare and unusual coin, you should acquit the defendant Gus Farber."

Without commenting upon the accuracy of this proposed instruction we say that

the instruction on the subject matter that was given was sufficient to protect appellant's rights. It was as follows: "You are instructed that it is a defense to the charges contained in the indictment that the gold coins in question had a recognized special value to collectors of rare and unusual coin, and that these gold coins were acquired not solely because of any value which might be derived from their gold content, but because of their recognized special value to collectors of rare and unusual coin. Therefore, if you find from the evidence that the gold coins in question had a recognized special value to collectors of rare and unusual coin, and were acquired because of this recognized special value to collectors of rare and unusual coin, and not solely for the purpose of acquiring the gold bullion contained in said coins, you shall acquit the defendant."

█ █ It is claimed that appellant was entrapped and therefore the judgment should be reversed. This defense is applicable only where the officers instigate the crime charged and committed, but does not apply, as here, where the officers discover the criminal in the doing of the crime which has already been instigated or already commenced or planned. See the leading case of Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L. Ed. 413, 86 A.L.R. 249. To allow the defense of entrapment here would be to bar conviction wherever the Secret Service allowed the crime already conceived to be carried out sufficiently to obtain evidence necessary for a conviction of the crime. The defense of entrapment is not here sustained.

█ The claim is made that the court erred in denying the motion for a directed verdict of "Not Guilty" after all of the evidence was in. Certainly there is no error in such a ruling when as we view it there was evidence amply sufficient to sustain the verdict of the jury of guilty.

As for other claimed errors premised upon the admission of evidence and upon the court's refusal to permit the introduction of evidence, we have examined each and every of such assignments, but find no reversible error.

Affirmed.