## UNITED STATES v. SEAGRAVES.
### Cr. No. 7–51.

District Court of Guam.
Oct. 9, 1951.

James G. Mackey, U. S. Atty., Agana, Guam, for U. S.

E. R. Crain, Finton J. Phelan, Jr., Agana, Guam, for defendant.

SHRIVER, Judge.

This case presents the following questions:

1. Does this court have jurisdiction to proceed without indictment and trial by jury?

2. Was it proper to permit the information to be amended?

3. Does the evidence introduced by the government show entrapment?

4. Does the evidence show a violation of 18 U.S.C.A. § 201 under the wording of the amended information?

I. Indictment and Jury Trial.

The court, over the objections of the defendant and pursuant to its order entered July 17, 1951 allowed the government to

proceed to trial on the basis of an information without trial by jury. The question is presented as to whether the court has jurisdiction to try defendants accused of felonies against the United States without indictment by grand jury and trial by petit jury unless waived.

Guam is declared to be an unincorporated territory of the United States in its organic act. The United States Congress made no provision for trial by jury in its bill of rights, 64 Stat. 384–385, 48 U.S.C.A. §§ 1421a, 1421b. This was not an oversight. S.R. 2109, 81st Cong.2d Sess. under date of July 20, 1950 incorporated at p. 3, Appendix 1, analysis of H. R. 7273:

Section 5. Provides for a bill of rights granting the Guamanians protection against infringement of personal freedom. The bill of rights is modeled upon the Bill of Rights in the United States Constitution but does not expressly provide for trial by jury in Guam. Since Guamanians derive their tradition in law from Spain, a civil-law nation, they have little knowledge or experience in trial by jury. The Guam Congress could institute trial by jury if it so desired.

 Any earlier doubt as to the constitutional authority of the United States Congress to eliminate trial by jury in unincorporated territories was disposed of by Chief Justice Taft, speaking for a unanimous court, in Balzac v. People of Porto Rico, 258 U.S. 298, 42 S.Ct. 343, 66 L.Ed. 627. The Balzac case is particularly applicable to Guam as Guam was acquired from Spain under the Treaty of Paris just as Puerto Rico was. It is believed that insofar as the present question is concerned the Balzac case holds:

1. There is no constitutional right to indictment and trial by jury in unincorporated territories.

2. The jury system needs citizens trained to the exercise of the responsibilities of jurors, a responsibility which it is hard for people not brought up in fundamentally popular governments at once to acquire.

3. The United States District Court in Puerto Rico (and of course the District Court of Guam) is a territorial court created by virtue of the sovereign congressional faculty, granted under Article IV, Sec. 3 of the Constitution, rather than a true United States court established under Article III of the Constitution to administer the judicial power of the United States.

4. Neither the United States citizen who is a Puerto Rican nor the citizen of the United States residing in Puerto Rico can enjoy a constitutional right to trial by jury as it is locality that is determinative of the application of the Constitution in such matters as judicial procedure and not the status of the people who live in the territory.

The reasoning in the Balzac case and also in the case of Dorr v. United States, 195 U.S. 138, 24 S.Ct. 808, 49 L.Ed. 128, clearly demonstrates that the procedural right to indictment and jury trial need not apply to unincorporated territories until the legislative bodies of those territories see fit to confer them after their emergence into the realm of popular government and the building of experience for their proper use.

The responsibility for governing Guam was vested in the Secretary of the Navy by the Executive Order of President McKinley dated December 23, 1898, No. 108A. The Secretary of the Navy carried out his functions through Naval Governors. The Naval Governor had to all intents and purposes almost complete powers. His authority was exemplified in a proclamation dated May 30th, 1946, by the then Naval Governor.

Par. I. The Naval Government of Guam is hereby re-established, and all powers of Government and jurisdiction in Guam and adjacent waters and over the inhabitants thereof, and final executive, legislative and judicial responsibility are vested in me as Naval Governor of Guam and will be exercised through subordinate commanders by my direction.

Although such authority existed it was exercised with beneficence and understanding, looking toward the time when the Guamanians would be self-governing and culminating in the passage of the Organic

Act. The influence of the Spanish Civil Law was lessened by the adoption in 1933 of local codes patterned on the California codes. The 9th Circuit Court of Appeals held in United States v. Johnson, 181 F.2d 577, that it would construe the Guam codes in the light of California decisions when the provisions are the same. This development, however, did not embody the adoption of a jury system and original trial was and is by a judge, Ch. III Codes of Civil Procedure of Guam.

The District Court of Guam was created by the Organic Act of Guam and its jurisdiction set forth, 64 Stat. 389–390, 48 U.S. C.A. §§ 1424–1424a.

"§ 1424. District Court of Guam; jurisdiction; rules of procedure

"(a) There is created a court of record to be designated the 'District Court of Guam', and the judicial authority of Guam shall be vested in the District Court of Guam and in such court or courts as may have been or may hereafter be established by the laws of Guam. The District Court of Guam shall have, in all causes arising under the laws of the United States, the jurisdiction of a district court of the United States as such court is defined in section 451 of Title 28, and shall have original jurisdiction in all other causes in Guam, jurisdiction over which has not been transferred by the legislature to other court or courts established by it, and shall have such appellate jurisdiction as the legislature may determine. The jurisdiction of and the procedure in the courts of Guam other than the District Court of Guam shall be prescribed by the laws of Guam.

"(b) The rules heretofore or hereafter promulgated and made effective by the Supreme Court of the United States pursuant to section 2072 of Title 28, in civil cases; section 2073 of Title 28, in admiralty cases; sections 3771 and 3772 of Title 18, in criminal cases; and section 53 of Title 11, in bankruptcy cases; shall apply to the District Court of Guam and to appeals therefrom. Aug. 1, 1950, c. 512, § 22, 64 Stat. 389.

"1424a. Appeals; jurisdiction of Court of Appeals for Ninth Circuit; appeals to Supreme Court

"(a) The United States Court of Appeals for the Ninth Circuit shall have jurisdiction of appeals from all final decisions of the District Court of Guam in all cases involving the Constitution, laws, or treaties of the United States or any authority exercised thereunder, in all habeas corpus proceedings, and in all other civil cases where the value in controversy exceeds $5,000, exclusive of interest and costs.

"(b) Any party may appeal to the Supreme Court of the United States from an interlocutory or final judgment, or order of the District Court of Guam, holding an Act of Congress unconstitutional in any civil action, suit, or proceeding to which the United States or any of its agencies or any officer or employee thereof, as such officer or employee, is a party. A party who has received notice of appeal under this section shall take any subsequent appeal or cross appeal to the Supreme Court. All appeals or cross appeals taken to other courts prior to such notice shall be treated as taken directly to the Supreme Court. Aug. 1, 1950, c. [512], § 23, 64 Stat. 390."

28 U.S.C.A. Ch. 121 which deals with the selection, qualifications, etc., of grand and petit jurors was not made specifically applicable to the District Court of Guam as were the provisions of chapters 21, 41, 43, 49 and 57, 64 Stat. 390, 48 U.S.C.A. § 1424b (c).

Rule 7(a), F.R.Cr.P., 18 U.S.C.A., requires indictment for an offense which may be punished by death and for an offense which may be punished by imprisonment for a term exceeding one year or at hard labor. Indictment may be waived by the defendant in the latter case and the United States may proceed by information.

Rule 23(a) provides that:

"Cases required to be tried by jury shall be so tried unless the defendant waives a jury trial in writing with the approval of the court and the consent of the government."

Rule 7(a) was intended to give effect to the Fifth Amendment to the Constitution of the United States and Rule 23(a) to Article III, Sec. 2, Par. 3 of that instrument. (Notes of Advisory Committee on Rules.)

An analysis of the laws affecting other jurisdiction prior to the promulgation of the F.R.Cr.P. show:

1. In Puerto Rico the qualifications of jurors to serve in the United States District Court were set forth by statute, 39 Stat. 966, 48 U.S.C.A. § 867.

2. In the Canal Zone the judge of the District Court provided for the selection, summoning and serving of jurors from among the citizens of the United States subject to jury duty and either party could demand a jury trial, 48 U.S.C.A. § 1347.

3. In the Virgin Islands in any criminal case originating in the District Court the right to trial by jury in criminal cases was granted on the demand of either party, but if no jury was demanded the case was tried by the court without a jury unless the judge ordered a jury trial, 49 Stat. 1814, 48 U.S.C.A. § 1406c.

While it is recognized that the District Court of Guam is bound by the Federal Rules of Criminal Procedure under the Organic Act to the same extent as if it had been mentioned in Rule 54 of such rules, in other territorial jurisdictions some provision exists for jury trial. In this jurisdiction, neither local law nor the United States Congress has provided specifically for either a grand or petit jury. On the contrary the Congress made it abundantly clear that in the exercise of local jurisdiction trial by jury would be dependent upon action by the Guam Legislature.

Nearly fifty per cent of the land area of Guam consists of naval or military reservations upon which offenses may be prosecuted as offenses against the United States or possibly against the laws of Guam. 18 U.S.C.A. § 7; Ch. I Penal Code of Guam, Sec. 27.

This court is unable to reconcile the concept that the parent legislative body, the United States Congress, intended to provide the constitutional safeguards of indictment and trial by jury when the United States prosecutes defendants for alleged felonies against the United States but deny them when the Government of Guam prosecutes for the same or a more serious offense against the Government of Guam. This is especially difficult to reconcile when this court now has jurisdiction of offenses against the United States and the Guam Legislature has provided for similar jurisdiction over local felonies when the Organic Act is amended to permit appeals to the 9th Circuit. Public Law 17, approved August 9, 1951.

Any conflict can be reconciled, however, if it is assumed that the United States Congress intended that the constitutional procedural rights embodied in Rules 7(a) and 23(a) of the Federal Rules of Criminal Procedure are to be followed only after provision is made for their implementation. The door would then be left open for the Congress or the Guam Legislature to provide for a jury system when either is of the view that the experience of the Guamanian people in the exercise of popular government justifies the extension of the jury system.

The court is further constrained toward this view as to the intent of Congress by the conditions on Guam with which the Congress must be presumed to have been aware. These conditions include the limited number of non-Guamanians who are resident United States citizens, the small civilian area and language barriers among the permanent population. The population majority resides on naval or military reservations and are essentially transient. These are members of the armed services and their dependents serving a tour of duty and contractor's employees brought to Guam under time limit personal service contracts. In addition there are many thousands of Filipino workers brought to Guam to engage in temporary employment under one year contracts. These conditions decrease the qualified juror potential.

It is determined, therefore, that the proper construction of the Organic Act, in the light of Congressional intent, is that the United States may prosecute felonies against it by information without indictment by a Grand Jury and that trial by petit jury was not intended at the present time.

II. Amended Information.

 Under date of July 16, 1951 the United States Attorney filed an informa-

tion in which he alleged that the defendant, at the Naval Supply Depot, Territory of Guam, gave fifty dollars to Tito L. Miraflor, an employee of the United States Navy, for the illegal procurement of Form 97 (Release of Government Vehicles) in violation of Section 201 of Title 18 of the United States Code.

Miraflor was the government's first witness and it developed that he was not directly employed by the United States Navy but that he was employed by the Luzon Stevadoring Company, a Philippine corporation. Luzon has a contract with the navy under the terms of which it recruits Filipinos for work on Guam. Luzon feeds and houses such employees on a naval reservation where it maintains its own services and police force. These employees perform various duties for the navy, including office work. The navy pays Luzon under its contract and Luzon pays the employee. The employee has no direct employment or contractual relationship with the navy and if he proves to be unsatisfactory he can summarily be removed from Guam without his consent.

On oral motion the United States Attorney was allowed to amend the information to provide that Miraflor was acting "for or on behalf of the United States." The United States Attorney was then allowed to file a written amended information which in addition to the foregoing alleged that among Miraflor's duties was the preparation of Form 97 and the fifty dollars was paid "to influence him in the illegal delivery of one Form 97" in violation of Section 201, etc.

Rule 7(e), F.R.Cr.P., permits amendment of an information with the consent of the court if no additional or different offense is charged and if the substantial rights of the defendant are not prejudiced. The amendment did not change the essential charges and the substantial rights of the defendant were not prejudiced. He was on notice that the elements of the offense charged against him was paying fifty dollars to a person acting for the United States to obtain a government form to which he ought not otherwise have been entitled. Conditions under which amendments may be made are set forth in Fredrick v. United States, 9 Cir., 163 F.2d 536.

## III. Entrapment.

At the close of the government's case the defendant moved for dismissal of the information and discharge on the ground that the government's evidence showed entrapment. The evidence is set forth in greater detail below but in outline the defendant had furnished Miraflor with the description of a piece of equipment for which he desired a completed Form 97 which would evidence the transfer of title to the equipment. Miraflor had access to blank forms 97 and typed up the requested form. He was not told to do this by any person in authority. After it was typed he placed it in the "in basket" of the surplus property officer. This officer checked the file and refused to approve the form. The defendant was not informed of this fact by Miraflor but Miraflor continued to encourage the defendant in the belief that the form would be issued in due course. Miraflor testified that the defendant told him that if he would obtain the form he (the defendant) would take care of Miraflor on the outside and that he wanted the form whether or not it was executed and duly issued. Miraflor advised his immediate superior, a Mrs. Burton, to the effect that the defendant was trying to bribe him. This was reported by Mrs. Burton to her higher authority and Miraflor was contacted by investigative officials of the navy. Miraflor telephoned the defendant and requested him to come to the surplus property office Friday, July 13, 1951. The defendant appeared and was told to return Monday, July 16, 1951 at 2 o'clock P. M. The investigative officials contacted the United States Attorney and as an agent of the F.B.I. was on Guam such agent took charge.

On Monday, July 16, prior to the arrival of the defendant, the navy officials and the F.B.I. agent went to the surplus property office. Miraflor was searched and any money taken from his person. The F.B.I. agent instructed him that when the defendant appeared he should inform him that he had the Form 97 ready for delivery and that he should deliver the form whether

or not he was paid for it but he should remind the defendant of the defendant's promise to take care of him on the outside. The defendant appeared and engaged Miraflor in conversation. The defendant left the office and went to his automobile. Miraflor followed and placed the Form 97 on the seat. The defendant then placed it in a hole in the seat cover of the automobile. The defendant then gave Miraflor an envelope containing fifty dollars. Miraflor returned to the building and the money was taken from him. The defendant drove off. The F.B.I. agent followed the defendant in another car, halted the car, demanded and was given the Form 97 which was under the seat cover.

It is to be noted that before any investigative officials had been brought into the case the defendant had offered to take care of Miraflor on the outside and that Miraflor had so reported. There are many cases on the question of entrapment but it is sufficient to cite the following cases which hold that it is not entrapment when the government agents apprehended the accused in the furtherance of a criminal enterprise. Louie Hung v. U. S., 9 Cir., 111 F.2d 325; Farber v. U. S., 9 Cir., 114 F.2d 5, certiorari denied 311 U.S. 706, 61 S.Ct. 173, 85 L.Ed. 458; Stein v. U. S., 9 Cir., 166 F.2d 851, certiorari denied 334 U.S. 844, 68 S.Ct. 1512, 92 L.Ed. 1768.

### IV. Evidence and Findings:

No special findings were requested. The court finds that the following general findings represent a fair summary of the evidence and conclusion to be drawn therefrom in the light of testimony introduced by both the government and the defendant.

The defendant is a contractor in Guam and as part of his business he deals in property declared surplus by the United States Government. He and others purchased a large quantity of scrap as a joint enterprise. This was purchased in the name of Louis Sheff of Manila, Philippines and the defendant is Sheff's agent in Guam. Included in the sale were cranes and other equipment. Prior to the events involved in this case, the defendant had had issued to him Forms 97 evidencing the sale of specific items of equipment. It was the practice of the defendant to submit to the naval surplus property officer lists of equipment upon which Forms 97 were desired. The surplus property officer caused the property to be investigated on site and identified as part of the surplus sale. In due course the Forms 97 were prepared by Miraflor and after execution delivered to the defendant.

On May 4, 1951 the defendant appeared at the surplus property office with a slip of paper identifying a Northwest Crane, series or model 25, engine USMC #5081–B, serial 9620, delivered the paper to Miraflor and requested the issuance of a Form 97. The Form 97 is a standard official form used by the United States Government to evidence the release of a motor vehicle. It is printed on bank safety paper and contains a serial number. It certifies that the motor vehicle described is the property of the United States and is transferred to the distributor, dealer, etc., in this case Louis Sheff. The department certifies that the transfer is the first transfer of the motor vehicle in ordinary trade and commerce subsequent to acquisition by the United States Government. On the reverse of the form provision is made for the first assignment of the vehicle by the dealer, distributor, etc. Its obvious purpose is to vest title and to enable the person who acquires the Form 97 to register the vehicle under the various state, territorial or other laws.

The evidence is conflicting but all forms used are subject to be accounted for by the surplus property officer. This officer requisitions the forms as needed and as the forms are serial he must be able to show that they have been issued for proper purposes by reference to the serial numbers and the use to which the form corresponding thereto has been put.

On May 4, 1951 the only person, due to changes in personnel, who was familiar with the Form 97 was Miraflor. The others, including the surplus property officer, had had no previous acquaintance with it but a few forms in blank were in the file of the surplus property officer and Miraflor had access to this file. Other forms properly executed were introduced by the defendant

and these were dated February 15, 1951. Miraflor testified that when the defendant came in on May 4, 1951 he knew the defendant only as a name which appeared on the office list of prospective bidders on surplus scrap or equipment. The court accepts the defendant's version that on the contrary he knew Miraflor well, had been in the office many times and had given Miraflor money on different occasions, ostensibly to insure that the defendant's name was not omitted when bid catalogues were issued by that office and that on one occasion his name was omitted and he lost out by not knowing of the sale and that other contractors also paid Miraflor for the same purpose. This view is further confirmed by the fact that contrary to the usual practice Miraflor immediately obtained the blank form without clearing with any of his superiors, typed in the information and put it in course of clearance for the necessary approvals. It is not reasonable to assume that Miraflor would have done this for a relative stranger. It is reasonable to assume that Miraflor has been paid in the past and that he could rely upon the lack of familiarity of his superiors with the Form 97 to insure its proper issuance as a matter of course.

The immediate officer in charge of the office was a Lt. Clark. When Lt. Clark found the Form 97 in his "in basket" he called for the Sheff file and examined it with Miraflor. Lt. Clark testified that he could not find any reference to the equipment for which the form was requested in the files and he directed that the form be placed back in the file with unused Forms 97. Miraflor testified that Lt. Clark said he wanted to investigate the matter and returned the form to be held by Miraflor. Miraflor did not advise the defendant that Lt. Clark had refused to approve the form but led the defendant to believe that it was in course of approval. On one occasion the defendant appeared in the office and talked with Miraflor. Mrs. Burton who was Miraflor's supervisor asked if she could help and was told that the defendant was after a Form 97. A Lt. Spence, who was Lt. Clark's superior, was contacted as Lt. Clark was absent. He was told what the defendant wanted. The defendant was given the Sheff file and the Form 97 and went to see Lt. Spence. Lt. Spence testified, however, that the defendant discussed another matter but did not mention the Form 97.

The defendant testified that he did not intend to do anything improper, that when he received the Form 97 on July 16, 1951 it had ceased to have any value to him, that the only reason he wanted it was because the equipment for which it was intended might be held up at the shipping point without it. The equipment had been shipped a few days before July 16; that he spoke to Miraflor in order to obtain catalogues of surplus property offered for sale and that he paid him the fifty dollars in order to make sure that he would not be discriminated against by having his name left off the list of those given an opportunity to bid. The defendant admitted that after his arrest he told the F.B.I. agent that this was Guam and like Manila you had to pay your way. He testified that in order to get the opportunity to participate in the surplus sales all contractors paid something, a case of whiskey, a dinner or something else.

After all the testimony is considered the ultimate fact remains that Miraflor was acting for or on behalf of the United States, that he was paid fifty dollars and coincident with such payment that he delivered the Form 97 to the defendant. The form was unsigned and just as Miraflor had originally prepared it. Miraflor had access to the forms and typed them out but he had no authority other than that. The defendant knew that he was not entitled to receive the form as on previous occasions before forms were issued he had directed the proper persons to the equipment for purposes of identification. The court believes and so finds that the defendant paid Miraflor the fifty dollars for the Form 97, plus Miraflor's continued interest in protecting the defendant in his right to receive information concerning the sales of surplus property.

However, the defendant is not being charged with being a callous person whose sense of obligation for the integrity of his government leaves much to be desired. Does the evidence under the amended information show an offense?

18 U.S.C.A. § 201 provides:

"Whoever promises, offers, or gives any money or thing of value, or makes or tenders any check, order, contract, undertaking, obligation, gratuity, or security for the payment of money or for the delivery or conveyance of anything of value, to any officer or employee or person acting for or on behalf of the United States, or any department or agency thereof, in any official function, under or by authority of any such department or agency or to any officer or person acting for or on behalf of either House of Congress, or of any committee of either House, or both Houses thereof, with intent to influence his decision or action on any question, matter, cause, or proceeding which may at any time be pending, or which may by law be brought before him in his official capacity, or in his place of trust or profit, or with intent to influence him to commit or aid in committing, or to collude in, or allow, any fraud, or make opportunity for the commission of any fraud, on the United States, or to induce him to do or omit to do any act in violation of his lawful duty, shall be fined not more than three times the amount of such money or value of such thing or imprisoned not more than three years, or both.

"This section shall not apply to violations of section 212 of this title." June 25, 1948, c. 645, 62 Stat. 691.

The court considers that the fairly recent case of Blunden v. United States, 6 Cir., 169 F.2d 991, 994, is in point. An employee of the United States had accepted bribes which were offered by the defendants to induce the employee to favor them in the sale of surplus property. The employee had no authority over the sale of surplus property but he caused other property, not surplus, to be delivered and kept the proceeds. The court said: "We do not have the assistance of any opinion or discussion by the District Judge of the question involved, and accordingly are not advised of the reasons for the ruling now under review. But under the foregoing construction of the statute we are of the opinion that appellants' motion for a judgment of acquittal should have been sustained. There is no question about the fact that the appellants delivered to Flisek the Packard automobile and over $31,000 to secure a priority or improper advantage over other purchasers of surplus Government property. But Flisek had no authority to give or even recommend the priority or advantage which the appellants sought. There is no question in our minds of the fact that the appellants intended to corrupt a Government employee. But the issue is, was it bribery within the provisions of Section 91, now § 201, Title 18 U.S.C.A.? What Flisek did in furtherance of the scheme between him and appellants was to defraud the Government in a matter in which he had no official duty or authority. The facts are that the appellants were seeking to purchase, although through improper methods, surplus Government property. Their negotiations with Flisek dealt with surplus Government property. Flisek at all times advised them that they were buying, or acquiring, surplus Government property. The record is equally as clear that Flisek had no authority with respect to the disposal of surplus Government property. Although he had authority to ship mission property out of the Depot, he had no authority to ship it to anyone not connected with the War Department, and neither he nor anyone at the Depot had authority to sell mission property. What Flisek actually did in the matter was not to make a decision or recommendation favorable to the appellants in a matter under his jurisdiction, in exchange for the money involved, but to illegally obtain the property from the Government, and turn it over to the appellants for resale and for a division of the profits. He has been indicted and convicted of stealing property of the United States, being the automobile motors involved in these transactions. In his own testimony, introduced by the Government, he testified that he obtained the property illegally, that he has pleaded guilty to having stolen Government property, and that he did not pay the Government for the property so illegally disposed of by him. We believe the situation is very similar to those discussed in United States v. Gibson, D.C., 47 F. 833, and In re Yee Gee, D.C., 83 F. 145, where the illegal act on the part of the Govern-

ment employee involved was outside the official functions of the employee to whom the bribe was offered. See also United States v. Boyer, D.C., 85 F. 425, 436."

In the instant case Miraflor had no authority to issue a Form 97 or to deliver a Form 97 except as a mechanical act under orders of his superiors. He had no discretionary authority to give or withhold. In order to accommodate the defendant he would have been required to take an unsigned Form 97 without authority and to deliver without authority or to cause the proper signatures to be forged on the document. If the document had been properly issued Miraflor had no discretion to refuse to deliver it.

The court has been unable to find any cases, nor has the government cited any cases, which indicate that in the circumstances herein set forth defendant's conduct constitutes a violation of 18 U.S. C.A. § 201. It necessarily follows that the information must be dismissed and the defendant discharged. It is so ordered.