### UNITED STATES v. QUILOP.
Cr. No. 21.

District Court of Guam.
Sept. 17, 1953.

John P. Raker, U. S. Atty., Agana, Guam, for the United States.

Lyle H. Turner, E. R. Crain, Robert E. Duffy, Agana, Guam, for defendant.

SHRIVER, District Judge.

The United States Attorney charged the defendant by information with two offenses of first degree murder in violation of 18 U. S.C. § 1111, and one offense of assault with intent to commit murder in violation of 18 U.S.C. § 113. The offenses took place in an area reserved to the United States by Executive Order No. 10178, October 31, 1950, 48 U.S.C.A. § 1421f note, 15 F.R. 7313, pursuant to Sec. 28 of the Organic Act of Guam, 48 U.S.C.A. § 1421f(b), 64 Stat. 392. The defendant was without funds and the court appointed three attorneys to represent him. On motion of the defendant the court designated the only psychiatrist available on Guam who is on duty with the United States Navy Medical Corps to examine into the present sanity of the defendant, 18 U.S.C.A. § 4244; Higgens v. United States of America, 9 Cir., 205 F.2d 650. The psychiatrist reported to the court that the defendant is of dull normal intelligence, is sane, and under good semantic conditions would be able to understand the proceedings against him and properly to assist in his own defense.

Arraignment was set, at which time counsel for the defendant advised the court that the defendant wished to enter a plea of guilty to all charges, but under questioning by the court it was not clear that he understood the charges under counts two and three which involve the killing of a fellow Filipino and the assault on a Chinese employee. He stated that he fully understood that the court could sentence him to death under count one, the murder of a Chinese cook. The arraignment was continued without acceptance of the plea. The Republic of the Philippines maintains a Consulate in Guam. The present Consul is a Philippine lawyer and as a result of further conferences with the defendant by the Consul and defense counsel the defendant entered pleas of guilty to all counts and waived indictment and trial by jury in writing in open court, which plea was accepted at the continued arraignment.

This court has held in United States v. Seagraves, D.C., 100 F.Supp. 424, that the United States Congress did not intend to provide the constitutional procedural rights of indictment and trial by jury at the present time even though the Federal Rules of Criminal Procedure, 18 U.S.C.A., have been made applicable to the District Court of Guam. As these questions are being appealed in a number of cases defense counsel stated that in the circumstances of this case the defendant desired to waive any rights he might have to indictment and trial by jury and that with intelligent understanding of the charges against him wished to rely on the court.

The defendant, now thirty-two years of age, was born and raised on a rice farm in the Philippines where he spent his life, except for a short time in Manila after World War II. He was recruited for employment in Guam where he has worked for about four years. The United States Attorney stated that as a result of his investigation there is nothing in the defendant's background or his conduct in Guam to indicate that prior to these offenses he acted improperly or showed any indications of violence. At the time of the offenses he was employed by a concessionaire as a bus boy at a snack bar on a United States Air Force reservation. One of the murdered men was a Chinese cook at the snack bar and

the two others were similarly employed there. According to the defendant's statement, made to investigating officers shortly after his arrest, a friend a week before had informed him that the Chinese cook employed at the snack bar had accused him of stealing. He apparently brooded over this accusation and on the night that the offenses were committed stated that the two Chinese were talking in their native dialect, laughing, and at times his name was mentioned. He stated that he thought they were laughing at him and talking about his stealing. He went behind the counter, took up a large meat knife and killed the Chinese cook. The Filipino attempted to prevent the killing and was also stabbed, dying shortly afterwards. The second Chinese was stabbed. A member of the Air Force was acting as a part-time employee as cashier but was not injured. The defendant in his statement to the investigating officers contended that he did not attempt to injure the Air Force man because he had not accused him of stealing. The defendant had no plan of escape but hid in the tall grass until his capture.

The United States put on testimony showing the above facts and the defendant made a statement in his own behalf in which he contended that before he took the knife the Chinese cook had pushed his head forward and had slapped him. He had, however, no explanation for not telling the investigating officers this at the time of his arrest, except that he was too confused to remember. The statement made to the investigating officers was taken without the aid of an interpreter and the court must consider the possibility that the defendant's understanding of English is limited.

In a case of this kind when the court sits without a jury and the choice is between a death sentence and life imprisonment, the court must rely upon such experience as it may have in an effort to understand the motives behind such crimes and the background of the individual who commits them.

During and before the United States had jurisdiction in the Philippines large numbers of Chinese citizens immigrated to the Philippines. Because of their business acumen they became the merchant class in the Philippines throughout the barrios or small villages, towns and cities. Filipinos of the type of this defendant were agricultural workers or small farmers. The Chinese also acted as the middlemen and money lenders when banking facilities were not available. This led to a great deal of prejudice upon the part of the Filipinos against the Chinese and with the resurgence of nationalism after Philippine Independance this prejudice became even more pronounced and, in this case, probably took the form of resentment against the Chinese cook.

In addition Filipinos who are raised as this defendant was raised on a small farm are essentially provincial and extremely suspicious of anything foreign to their experiences. This suspicion is directed not only toward aliens but oftentimes Filipinos who come from different provinces in the Philippines and who speak a different dialect. It is noted that in Guam the large Government contractors attempt to recruit Filipinos from the same province or area. In one murder case which came before this court the only motive for the killing appeared to be that Filipinos from a different province resented the fact that the deceased Filipino was patronizing a restaurant which they thought should be reserved for Filipinos from their province.

Living in Guam does little to soften or eliminate these prejudices. Most Filipino contract laborers live in camps on military reservations and largely associate with people from their own provinces. It may further be pointed out that the Philippine law takes into consideration these characteristics and recognizes what is called "obfuscation" as an extenuating circumstance when an individual, otherwise guility, is angry and confused at the time the offense was committed.

In view of the considerations as outlined the court is of the view that the defendant should be sentenced to life imprisonment rather than death.