**Muaava MEAAMAILE, aka Muaava Gaseata, Plaintiff,**

v.

**AMERICAN SAMOA; LBJ Hospital; Vaiula Tuatoo, M.D.; and Joseph Turner, M.D., Defendants.**

Civ. No. 82–0365.

United States District Court, D. Hawaii.

Nov. 12, 1982.

David C. Schutter, Richard A. Marshall, Honolulu, Hawaii, for plaintiff.

Charles P. Hagood, Jr., Asst. Atty. Gen., Aviata F. Faalevao, Atty. Gen., Pago Pago, American Samoa, for defendants; Joseph L. Dwight, Jr., Honolulu, Hawaii, of counsel.

### ORDER GRANTING MOTION TO DISMISS

SAMUEL P. KING, Chief Judge.

### I. BACKGROUND

Plaintiff is a citizen of Western Samoa presently residing in the State of Hawaii. In August 1979, plaintiff was a civilian employee on the Western Samoa-owned ship "Queen Salamasina." This ship was used to ferry passengers and cargo between Western Samoa and American Samoa. On August 8, 1979, agents of the Government of American Samoa lawfully took control of the "Queen Salamasina" and used it to assist the American Samoa tugboat "Tatoso" in removing a vessel from a reef in the channel off Manua Island. During the course of this rescue operation plaintiff received an open, compound fracture of his leg. Plaintiff was taken to defendant LBJ Hospital in Pago Pago, American Samoa, where he remained for almost 14 months. During his stay at LBJ Hospital, plaintiff developed a serious infection in his left leg. In October 1980, plaintiff was transferred to Tripler Hospital in Honolulu, Hawaii, where his lower left leg was amputated in December 1980.

On July 13, 1982, plaintiff filed this suit alleging (1) that plaintiff's original injuries were proximately caused by the negligence

of the agents of defendant American Samoa in carrying out the rescue operation discussed above; (2) that plaintiff was injured by the medical malpractice of defendants Dr. Vaiula Tuatoo, Dr. Joseph Turner, and LBJ Hospital, and that defendant American Samoa is responsible for such malpractice under the doctrine of respondeat superior; and (3) that because of his nationality as a Western Samoan plaintiff received inferior medical care at LBJ Hospital, in violation of 42 U.S.C. §§ 1981, 1983, and 1985.

Plaintiff asserts the jurisdiction of this court based upon the existence of diversity of citizenship within the meaning of 28 U.S.C. § 1332(a)(2), and upon the existence of a federal question within the meaning of 28 U.S.C. § 1331 arising out of plaintiff's civil rights allegations. Although the complaint makes no mention of admiralty jurisdiction, plaintiff's counsel argued at the hearing on this motion that the facts alleged in plaintiff's complaint state a cause of action in admiralty. Thus, solely for the purposes of the discussion on this motion, we will treat plaintiff's complaint as having alleged the existence of this court's admiralty jurisdiction under 28 U.S.C. § 1333.

The summons and complaint in this action were sent to defendants by certified mail.

On August 18, 1982, defendants made this motion to dismiss the action or quash the return of service on the ground that defendants had not been properly served. Defendants also moved to dismiss the suit on the basis of improper venue. After reviewing the relevant authorities, it is the conclusion of this court that the motion to dismiss must be granted.

## II. SERVICE OF PROCESS

Defendants were served with the summons and complaint by certified mail in American Samoa. There is no doubt that such service was ineffective under the applicable law. Both the manner and place of service were improper.

Defendants were not, at the time they were served, and are not, at present, to be found within the State of Hawaii. Rule 4(e) of the Federal Rules of Civil Procedure provides the rule governing the proper manner of service upon a party not an inhabitant of or found within the state in which a district court sits. Rule 4(e) provides in part:

> Whenever a statute of the United States or an order of court thereunder provides for service of a summons ... upon a party not an inhabitant of or found within the state in which the district court is held, service may be made under the circumstances and in the manner prescribed by the statute or order, or, if there is no provision therein prescribing the manner of service, in a manner stated in this rule.

Plaintiff has not suggested, nor has this court found, any federal statute providing for any special manner of service upon the defendants in this case.[1]

Rule 4(e) further provides that service upon a non-inhabitant party may be made in accordance with a statute or rule of the state in which the district court sits. Plaintiff has not alleged, and cannot properly allege, however, that any Hawaii statute or rule provides for the service of process upon defendants. It is clear that the requirements for service in accordance with Hawaii's long-arm statute, Hawaii Rev.Stat. §§ 634–35, 634–36, have not been met.[2]

■ Thus, since neither any federal statute nor any Hawaii statute or rule provides for any special manner of service in this

---

1. Note that since the merger of civil and admiralty rules in 1966, service of process in maritime actions is covered by the provisions of Rule 4 of the Federal Rules of Civil Procedure.

2. Hawaii Rev.Stat. § 634–35 provides as follows:

*Acts submitting to jurisdiction.* (a) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any

case, service must be made in accordance with the provisions of Rule 4, specifically, the provisions of Rule 4(c) and (d).[3] These

cause of action arising from the doing of any of the acts:

(1) The transaction of any business within this State;

(2) The commission of a tortious act within this State;

(3) The ownership, use, or possession of any real estate situated in this State;

(4) Contracting to insure any person, property, or risk located within this State at the time of contracting.

(b) Service of process upon any person who is subject to the jurisdiction of the courts of this State, as provided in this section, may be made as provided by section 634–36, if he cannot be found in the State, with the same force and effect as though summons had been personally served within this State.

(c) Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him is based upon this section.

(d) Nothing herein contained limits or affects the right to serve any process in any other manner now or hereafter provided by law.

Hawaii Rev.Stat. § 634–36 provides as follows:

*Manner of service under sections 634–33 to 35.* When service of summons is provided for by sections 634–33, 634–34, or 634–35, service shall be made by leaving a certified copy thereof with the director of regulatory agencies or his deputy, who shall keep a record of each such summons and the day and hour of service, provided that notice of the service and a certified copy of the summons and of the complaint are served upon the defendant personally by any person authorized to serve process in the place in which he may be found or appointed by the court for the purpose, or sent by certified or registered mail, postage prepaid, with return receipt requested, by the plaintiff or his attorney to the defendant. The plaintiff or his attorney shall file the return of the serving officer or an affidavit showing that the notice and the copy of summons and complaint were served as aforesaid or sent by certified or registered mail as aforesaid, and in the latter case the return receipt signed by the defendant shall be filed with the affidavit. The service shall be deemed complete upon delivery of the required papers to the defendant outside the State, personally or by mail as provided.

After service on the director or his deputy, if the defendant cannot be found to serve or mail the summons and the facts shall appear by affidavit or otherwise to the satisfaction of the court, it may order that service be made by publication of summons in at least

provisions were not complied with and the service attempted in this case was therefore ineffective.

one newspaper published in the State and having a general circulation in the circuit in which the action has been instituted, in such manner and for such time as the court may order, but not less than once each week in four successive weeks, the last publication to be not less than twenty-one days prior to the return date stated therein unless a different time is prescribed by order of the court.

**3.** Rule 4(c) and (d) provide, in relevant part, as follows:

(c) *By Whom Served.* Service of process shall be made by a United States marshal, by his deputy, or by some person specially appointed by the court for that purpose, except that a subpoena may be served as provided in Rule 45. Special appointments to serve process shall be made freely. Service of process may also be made by a person authorized to serve process in an action brought in the courts of general jurisdiction of the state in which the district court is held or in which service is made.

(d) *Summons: Personal Service.* The summons and complaint shall be served together. The plaintiff shall furnish the person making service with such copies as are necessary. Service shall be made as follows:

(1) Upon an individual other than an infant or an incompetent person, by delivering a copy of the summons and of the complaint to him personally or by leaving copies thereof at his dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process.

. . . .

(6) Upon a state or municipal corporation or other governmental organization thereof subject to suit, by delivering a copy of the summons and of the complaint to the chief executive officer thereof or by serving the summons and complaint in the manner prescribed by the law of that state for the service of summons or other like process upon any such defendant.

(7) Upon a defendant of any class referred to in paragraph (1) or (3) of this subdivision of this rule, it is also sufficient if the summons and complaint are served in the manner prescribed by any statute of the United States or in the manner prescribed by the law of the state in which the district court is held for the service of summons or other like process upon any such defendant in an action brought in the courts of general jurisdiction of that state.

■ Besides having been served in an improper manner, defendants were served outside the territorial limits within which service could properly be effected. Rule 4(e) provides in relevant part:

> All process other than a subpoena may be served anywhere within the territorial limits of the state in which the district court is held, and when authorized by a statute of the United States or by these rules, beyond the territorial limits of that state.

American Samoa is not within the territorial limits of the State of Hawaii.[4] Plaintiff has not suggested, nor has this court found, any federal statute authorizing the service of process in this case beyond the territorial limits of Hawaii. Also, it is clear that the requirements of the Hawaii long-arm statute have not been met. Thus, service in accordance with that statute cannot be invoked pursuant to the provision of Rule 4(e) that allows service in accordance with state law. It is clear, therefore, that defendants were improperly served outside the territorial limits of Hawaii. The service attempted was thus ineffective for this reason also.

■ Finally, the Foreign Sovereign Immunities Act of 1976 ("the Act"), 28 U.S.C. §§ 1330, 1602–1611, has no applicability to this case. American Samoa is not a "foreign state" within the meaning of the Act, but rather an unincorporated territory of the United States. Service upon American Samoa cannot, therefore, be properly effected pursuant to 28 U.S.C. § 1608, which provides rules for service upon foreign states. The order of this court entered on September 23, 1982, directing service pursuant to the Act is hereby vacated.

For the reasons discussed above, defendants' motion to dismiss this action on the ground of failure of service must be granted.

### III. VENUE [5]

■ The complaint in this action states that federal jurisdiction is invoked on two grounds—diversity of citizenship and the existence of a federal cause of action. As noted above, this court will also, for the purposes of this motion, treat plaintiff's complaint as having alleged the existence of this court's admiralty jurisdiction.

The general federal venue statute, 28 U.S.C. § 1391, provides in part:

> (b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law.

■ Here, the cause of action arose and all defendants reside in American Samoa, which is not within the judicial district of Hawaii.[6] Thus, since jurisdiction is not founded solely on diversity of citizenship, and since no special venue provision appears to be applicable to this case,[7] proper venue

---

**4.** Also, American Samoa is not within the federal judicial district of Hawaii. *See* 28 U.S.C. § 91.

**5.** It seems that this action might have been dismissed for lack of personal jurisdiction on the grounds that defendants and the cause of action lack the constitutionally required minimal contacts with the forum state. However, defendants have waived any such defense by failing to raise the jurisdiction issue. Fed.R. Civ.P. 12(h)(1). Also, the Eleventh Amendment to the United States Constitution protects only states, not territories, from suit by non-citizens.

Note that the diversity requirements of 28 U.S.C. § 1332(a) cannot be met with respect to American Samoa since American Samoa is neither a citizen of a state, a citizen of a foreign state, nor a foreign state. Subject matter competence may properly be founded, however, upon plaintiff's federal civil rights claim.

**6.** *See* note 4, *supra*.

**7.** Note that if plaintiff had brought an action at law under the Jones Act, 46 U.S.C. § 688, as an alternative to an action in admiralty, the special venue provisions of the Jones Act would have come into play. These provisions state that "[j]urisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located." The Supreme Court has held that the word "jurisdiction" in this provision means venue. *Panama R.R. Co. v. Johnson,* 264 U.S. 375, 44 S.Ct. 391, 68 L.Ed. 748 (1924), 1 J. Moore, *Moore's Federal Practice* ¶ 0.144[13.–4] (2d ed.1982). American Samoa does not "reside" within or have its principal

does not exist in the District of Hawaii with respect to plaintiff's civil claims. This presents an additional ground demanding the dismissal of plaintiff's civil claims.

■ Also, although the general federal venue statute (28 U.S.C. § 1391) does not apply to admiralty actions,[8] it is clear that venue does not lie in Hawaii under traditional admiralty venue rules with respect to this suit. Under traditional admiralty rules, venue of an *in personam* suit is proper where the defendant is found and service of process is made on him, or where his property has been attached. *In re Louisville Underwriters*, 134 U.S. 488, 10 S.Ct. 587, 33 L.Ed. 991 (1890); *Societe Com. de Transp. Transatl. v. S.S. "African Mercury"*, 366 F.Supp. 1347 (S.D.N.Y.1973); *Fluor Corp., Ltd. v. S/S President Coolidge*, 52

F.R.D. 538 (S.D.N.Y.1971); *Rodriquez v. United Fruit Company*, 236 F.Supp. 680 (E.D.Va.1964), *rev'd on other grounds sub nom., Fanning v. United Fruit Co.*, 355 F.2d 147 (4th Cir.1966); 1 J. Moore, *Moore's Federal Practice* ¶ 0.144[13.–1] (2d ed.1982). American Samoa cannot be found within Hawaii and service of process has not been and cannot be made upon American Samoa within Hawaii. Also, none of American Samoa's property has been attached in Hawaii, nor is it clear that it could be. *See Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). In short, venue does not lie in Hawaii for an admiralty action against American Samoa.

■ It is the conclusion of this court, then, that this action must be dismissed for lack of venue, as well as failure of service.[9]

office in Hawaii. It is clear, then, that venue would not lie in Hawaii for an action against American Samoa under the Jones Act.

**8.** Although admiralty and civil practice were merged under the Federal Rules of Civil Procedure in 1966 and Rule 2 was amended to define an admiralty or maritime claim as a "civil action" for purposes of the Rules, Rule 82 makes it clear that it is not to be inferred from the definition of "civil action" in Rule 2 that the term "civil action" as used in the general venue statute includes actions identified as maritime under Rule 9(h). Specifically, Rule 82 states that "[a]n admiralty or maritime claim within the meaning of Rule 9(h) shall not be treated as a civil action for purposes of Title 28, U.S.C. § 1391–93."

**9.** Furthermore, even if it were not clear under the general venue statute and traditional admiralty rules that venue does not lie in Hawaii for the purposes of this action, this court would dismiss this suit under the doctrine of *forum non conveniens*. Note that the doctrine of *forum non conveniens* is applicable to maritime suits. *Fluor Corp., Ltd. v. S/S President Coolidge*, 52 F.R.D. 538 (S.D.N.Y.1971). Although 28 U.S.C. § 1404(a) denies federal courts the power to dismiss suits on the ground of *forum non conveniens* when there is another federal district court where the action might have been brought and that court is the more convenient forum, federal courts retain the power to dismiss where no other federal district court exists to which the action may properly be transferred and the action should have been brought in a state court or in a foreign country. 28 U.S.C. § 1404(a) codified the doctrine of *forum non conveniens* by providing for the transfer of cases from one federal court to

another in which venue is more appropriate. This statute does not address situations in which transfer to another federal court cannot properly be made. Courts have therefore held that 28 U.S.C. § 1404(a) does not deprive federal courts of the power to dismiss cases which cannot be properly transferred to another federal court and which should have been brought in state or foreign courts. *Vanity Fair Mills v. T. Eaton Co.*, 234 F.2d 633, 645 (2d Cir.1956), *cert. denied*, 352 U.S. 871, 77 S.Ct. 96, 1 L.Ed.2d 76 (1956), *reh'g denied*, 352 U.S. 913, 77 S.Ct. 144, 1 L.Ed.2d 120 (1956); *Harrison v. Capivary, Inc.*, 334 F.Supp. 1141 (E.D.Mo. 1971); 1A J. Moore, *Moore's Federal Practice* ¶ 0.204 (2d ed.1982). The case at bar cannot properly be transferred to another federal court and the action was properly brought before the High Court of American Samoa. The same grounds which have led courts to hold that federal courts retain the power to dismiss suits which should have been brought in *state* or *foreign* courts apply with equal force to suits which should have been brought in *territorial* courts. Thus, this court finds that the adoption of 28 U.S.C. § 1404(a) did not diminish the power of federal courts to dismiss cases that cannot properly be transferred to another federal court and that should have been or have been brought in territorial courts. This is such a case. Moreover, dismissal of this suit is particularly appropriate where plaintiff had already sued in the High Court of American Samoa prior to bringing this action in Hawaii. The plaintiff's choice of forum should rarely be disturbed if jurisdiction and venue exist in that forum. However, the doctrine of *forum non conveniens* may properly be applied to dismiss an action when the convenience of the parties

## IV. RIGHT TO A JURY TRIAL AND INDEPENDENT JUDICIARY

Plaintiff argues that despite the unavailability of effective service and the lack of venue, this case should be tried in the District of Hawaii because this is the court with the closest ties to this case in which plaintiff can obtain his alleged constitutional rights to a trial by jury and an independent judiciary. Leaving aside the fact that Hawaii's ties to this case are tenuous, the basic thrust of plaintiff's argument is ill-founded.

### A. *Right to a Jury Trial*

The logic of plaintiff's argument on the jury trial issue is difficult to comprehend. Plaintiff contends that fundamental constitutional rights apply in unincorporated territories of the United States. Plaintiff further argues that the Seventh Amendment right to a jury trial in disputes of major importance is a fundamental constitutional right, and, as such, is applicable to American Samoa. Finally, plaintiff asserts that as a result of the foregoing premises, plaintiff has a right to a jury trial in Hawaii because it is the federal district court with the closest ties to this case. There is no logical connection between the premise that the Seventh Amendment is applicable to American Samoa and the contention that plaintiff is entitled to a jury trial in *Hawaii.* If the Seventh Amendment applies in American Samoa, plaintiff is indeed entitled to a jury trial in American Samoa. This circumstance would in no way, however, grant plaintiff the right to a trial in *Hawaii* with respect to a case where service cannot be had over the defendants and venue does not exist. The right to a jury trial in American Samoa means the right to a jury trial in American Samoa.

The fact that American Samoa has not heretofore granted jury trials in civil cases does not give plaintiff the right to demand that his suit be entertained in Hawaii despite clear statutory obstacles to the action. Rather, if plaintiff believes the Seventh Amendment to be applicable in American Samoa, he must pursue his right to a jury trial *there.* Plaintiff has in fact filed suit in American Samoa and asked for a jury trial. It is not at all clear that he will necessarily be denied a jury trial there since, as he himself points out, Part 4 of Title XI on Civil Procedure of the American Samoa Code is reserved for provisions on

and the ends of justice weigh heavily in favor of dismissal. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). Factors of public interest must also be considered in determining whether to apply the *forum non conveniens* doctrine. *Gulf Oil v. Gilbert,* 330 U.S. at 508–509, 67 S.Ct. at 843. In this connection, it is preferable to avoid the use of a local forum for the adjudication of disputes which lack significant local contacts. *Fitzgerald v. Texaco, Inc.,* 521 F.2d 448 (2d Cir.1975), *cert. denied,* 423 U.S. 1052, 96 S.Ct. 781, 46 L.Ed.2d 641 (1976). This court concludes that considerations of convenience, efficiency, justice, and public interest weigh heavily in favor of dismissal of this suit on *forum non conveniens* grounds.

Plaintiff now resides in Hawaii and received treatment at Tripler Hospital by local doctors immediately subsequent to his stay at LBJ Hospital in Pago Pago. However, virtually all other practical considerations involved in this case demonstrate that great advantages of convenience, efficiency, and justice can be attained by the trial of this case in American Samoa. The accident in which the plaintiff was injured occurred in American Samoa waters. The medical malpractice and discrimination alleged by plaintiff are alleged to have occurred in Pago Pago. This leads to a situation in which access to the most important sources of proof can most easily be had in American Samoa. Also, it would not be possible to require the attendance of unwilling witnesses at a trial of this action in Hawaii. *See* Fed.R.Civ.P. 45(e). Moreover, the cost of obtaining the attendance of witnesses would presumably be much lower if trial were held in American Samoa. Furthermore, if a view of either the LBJ Hospital or the scene of the accident were appropriate to the action, such a view would be much less costly and less difficult to arrange were trial to be held in American Samoa. In short, all of the practical considerations that make trial of a case easy, expeditious, and inexpensive call for the trial of this case in American Samoa. These considerations, together with the public interest in avoiding the adjudication of disputes here which lack significant contacts with Hawaii, would demand the application of the doctrine of *forum non conveniens* in this case even were it not clear that venue does not exist here under the general venue statute and admiralty venue rules.

the jury.[10] Moreover, if plaintiff is denied the right to a jury trial by the High Court of American Samoa, he can sue the Secretary of the Interior, who is responsible for administering the government of the territory, in a federal district court and demand that the Secretary of the Interior be ordered to provide for the granting of jury trials in major civil cases in American Samoa. *See King v. Morton*, 520 F.2d 1140 (D.C.Cir.1975).[11] If it were then determined that plaintiff *does* have a right to a

jury trial in American Samoa, plaintiff's right would no longer be denied and there would be no reason for the trial of this case in Hawaii. On the other hand, if it were determined that the Seventh Amendment is *not* applicable in American Samoa, plaintiff would likewise have no cause to demand a trial in Hawaii.

The consequence of adopting plaintiff's argument would be an inappropriate usurpation of the authority of American Samoa

10. *See Richardson v. Dudley*, 295 F.Supp. 181 (S.D.N.Y.1969), where the court dismissed a complaint seeking a declaratory judgment that the plaintiff was entitled to a jury trial in a criminal proceeding where final state adjudication as to the jury trial issue appeared imminent. *See also Rodriguez Rivera v. Maiz*, 331 F.Supp. 713 (D.P.R.1971), where plaintiffs sought a federal court injunction against criminal proceedings against them in the territorial courts of Puerto Rico on the ground, among others, that they did not have the right to a trial by jury in Puerto Rico. The federal court denied the injunction on the basis that plaintiffs had not exhausted their remedies in the local courts. Although plaintiff in the case at bar does not seek injunctive relief, but rather a trial itself, the reasoning of the courts in *Dudley* and *Rodriguez* is equally applicable here. Plaintiff's failure to exhaust his local remedies is in itself enough to demand the rejection of his jury trial argument.

11. Plaintiff's reliance on this case is misplaced. In *King v. Morton*, an American Samoan convicted of tax code violations in the High Court of American Samoa at a trial in which he was denied a jury sought a declaratory judgment in the Federal District Court for the District of Columbia that the Secretary of the Interior's rules and regulations denying the right of trial by jury in criminal cases in American Samoa were unconstitutional. King also sought an injunction against the enforcement of his conviction. The district court dismissed King's case for want of jurisdiction, and King appealed to the D.C. Circuit. The procedural setting of the *King* case was thus completely different from the case at bar. In the *King* case, there were no problems of service and venue, and the parameters of the circuit court's finding of probable jurisdiction were extremely limited. The sole defendant in that case was the Secretary of the Interior, and the issue was whether he had administered the Government of American Samoa in accordance with the requirements of the United States Constitution. As noted by the Court of Appeals, "[w]hatever force the government's argument [against a finding of jurisdiction] might have in cases against the Samoan government or its officers

involving the interpretation or application of Samoan law, the argument has no application to this case .... [The finding of probable jurisdiction in this case] does not mean that the door of the district court is open wide to claims properly within the peculiar province of the Samoan court, but only that it cannot be shut to Samoan plaintiffs properly challenging the lawfulness of the actions of an official of the United States government." 520 F.2d 1144. The issue before this court is not a jurisdictional one. Nevertheless, it is important to note that this *is* a case against the Samoan government that involves the interpretation and application of Samoan law. These factors militate in favor of respecting the service and venue obstacles to the entertainment of this action.

This is not a case in which this court is asked to determine whether an official of the United States government has properly carried out his duties in accordance with the United States Constitution. It is not a case in which this court is asked to determine whether the Seventh Amendment applies to American Samoa. That question is simply not before us. Rather, this case is an admiralty, medical malpractice and civil rights case having no significant contacts with this forum. This is, in fact, a case "properly within the peculiar province of the Samoan courts." *Id.*

Another distinction between the *King* case and the case at bar is that the plaintiff in *King* had exhausted his remedies in American Samoa. King had already appealed his conviction to the highest court in American Samoa prior to filing suit in the District of Columbia. Here, plaintiff has not yet been denied a jury trial by *any* court in American Samoa, and has certainly not appealed any such denial.

Although plaintiff may wish to rely on the ultimate decision in the *King* case (which was that jury trials must be available in *criminal* trials in American Samoa) as persuasive authority supporting his demand for a civil jury trial in American Samoa, the *King* case provides no authority whatsoever for the proposition that plaintiff may run roughshod over fundamental service and venue rules and demand the trial of his case in Hawaii.

courts to hear cases intimately related to American Samoa.

B. *Right to an Independent Judiciary*

Plaintiff contends that he is entitled to a trial in an Article III court staffed by judges independent of executive control. Since no Article III court exists in American Samoa, plaintiff asserts that he is entitled to a trial in a jurisdiction where such a court exists. Because this is the closest Article III court, plaintiff claims that this is where his trial should be held, despite any service and venue obstacles to his action. The basic fallacy of plaintiff's argument is that its fundamental premise is unfounded—plaintiff is simply not entitled to a trial in an Article III court. Rather, he is entitled to a trial in the High Court of American Samoa, which is a territorial court duly constituted under *Article IV* of the United States Constitution. Plaintiff has, as noted, brought suit in that court, and there is no indication that he will not receive a trial there.

The judicial power of American Samoa is vested in the High Court of American Samoa and the district courts. The judiciary is independent of the legislative and executive branches of the American Samoa government, but is not independent of the Secretary of the Interior, who appoints to the High Court the Chief Justice and an Associate *Justice.* Rev.Const.Am. Samoa art. III, §§ 1, 2, 3; Am. Samoa Code § 3.1001 (1981). Associate *Judges,* no less than five, are appointed by the territorial Governor upon recommendation of the Chief Justice, and are subject to confirmation by the Samoan Senate. Am. Samoa Code § 3.1004 (1981). *See* Some Observations on the Judiciary in American Samoa, 18 U.C.L.A.L.Rev. 581 (1971); The Status of American Samoa: A Brief Overview, 2 The Samoan Pacific L.J. 28 (1974). Appeals from decisions of the High Court are to an Appellate Division consisting of the Chief Justice and the Associate Justice of the

High Court, Acting Associate Justices specially designated by the Secretary of the Interior, and the Associate Judges. Am. Samoa Code § 3.0220 (1981). Sessions of the Appellate Division are held before three Justices and two Associate Judges. *Id.*

The courts established for American Samoa are not Article III courts, but, rather, *legislative* courts created by virtue of the general right of sovereignty which exists in the government and by virtue of Article IV, Section 3, Clause 2 of the United States Constitution, which enables Congress to make all needful rules and regulations respecting the territory belonging to the United States. *American Insurance Co. v. Canter,* 26 U.S. (1 Pet.) 511, 7 L.Ed. 242 (1828) (upholding the validity of an admiralty decree rendered by an inferior territorial tribunal consisting of a notary and five jurors); *McAllister v. United States,* 141 U.S. 174, 11 S.Ct. 949, 35 L.Ed. 693 (1891); *International Longshoremen's & Warehousemen's Union v. Juneau Spruce Corp.,* 342 U.S. 237, 72 S.Ct. 235, 96 L.Ed. 275 (1952). *See also Rose v. McNamara,* 375 F.2d 924 (D.C.Cir.1967), *cert. denied,* 389 U.S. 856, 88 S.Ct. 70, 19 L.Ed.2d 121 (1967); *United States v. Seagraves,* 100 F.Supp. 424 (D.Guam 1951).

▆▆▆ The United States Supreme Court reiterated as recently as June 1982 that Congress need not invest territorial courts with the attributes of an Article III court. *Northern Pipeline Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). It is such a non-Article III territorial court that Congress has provided to plaintiff for the adjudication of his claims.[12] Congress need not make an Article III court available for the adjudication of disputes arising out of events occurring within a United States territory, and has therefore not denied plaintiff any constitutional right by not doing so in this case. Moreover, territorial

---

12. Note that Congress properly delegated its authority to determine the structure of the American Samoa judicial system to the Secretary of the Interior. *See American Insurance*

*Co. v. Canter,* 26 U.S. (1 Pet.) 511, 7 L.Ed. 242 (1828); *King v. Morton,* 520 F.2d 1140 (D.C.Cir. 1976).

courts are competent to decide cases arising under the Constitution and laws of the United States. *Benner v. Porter,* 50 U.S. (9 How.) 235, 13 L.Ed. 119 (1850); *King v. Morton,* 520 F.2d at 1144 (1975). The High Court of American Samoa is, therefore, competent to decide plaintiff's federal civil rights claim. Plaintiff cannot assert any denial of due process on the ground that the High Court cannot adjudicate his claims.

## V. THE AUTHORITY OF THE SAMOAN COURTS TO ADJUDICATE PLAINTIFF'S ADMIRALTY CLAIM

■ Although not raised in any of plaintiff's papers, plaintiff argued at the hearing on this motion that he was entitled to a trial in this court on his admiralty claim since the admiralty jurisdiction of the United States is vested solely in Article III courts, which the High Court of American Samoa is not. This argument is easily disposed of—the admiralty jurisdiction of the federal courts is exclusive only with respect to *in rem* admiralty claims, and plaintiff's action is not *in rem.* The Judiciary Code provides that the federal district courts shall have exclusive jurisdiction of "[a]ny case of admiralty or maritime jurisdiction, *saving to suitors in all cases all other remedies to which they are otherwise entitled.*" 28 U.S.C. § 1333. [Emphasis added.] This "saving to suitors" clause has been held by the Supreme Court to allow state courts concurrent jurisdiction with federal district courts over maritime contracts and marine torts where suit is brought to obtain a judgment against the party liable. *The Glide,* 167 U.S. 606, 17 S.Ct. 930, 42 L.Ed. 296 (1897); *American Steamboat Co. v. Chase,* 83 U.S. (16 Wall.) 522, 21 L.Ed. 369 (1873); *Leon v. Galceran,* 78 U.S. (11 Wall.) 185, 20 L.Ed. 74 (1871); *The Hine v. Trevor,* 71 U.S. (4 Wall.) 555, 18 L.Ed. 451 (1867); *Taylor v. Carryl,* 61 U.S. (20 How.) 583, 15 L.Ed. 1028 (1858).

> Admiralty's jurisdiction is "exclusive" only as to those maritime causes of action begun and carried on as proceedings *in rem,* that is, where a vessel or thing is itself treated as the offender and made the defendant by name or description in order to enforce a lien .... [citations omitted] It is this kind of *in rem* proceeding which state courts cannot entertain. But the jurisdictional act does leave state courts "competent" to adjudicate maritime causes of action in proceedings *"in personam,"* that is, where the defendant is a person, not a ship or some other instrument of navigation.

*Madruga v. Superior Court of California, in and for the County of San Diego,* 346 U.S. 556, 560, 74 S.Ct. 298, 300, 98 L.Ed. 290 (1954). The case at bar is an *in personam* action. The rule granting state courts concurrent jurisdiction over *in personam* admiralty claims should apply with equal force to territorial courts. There is, then, no barrier to the exercise of *in personam* admiralty jurisdiction by the High Court of American Samoa. *See The Vessel Fijian Swift v. Trial Division, High Court of American Samoa,* 4 Am. Samoa Rep. 983 (1975). Plaintiff's theory is, therefore, without merit.

■ Furthermore, even if this were an *in rem* admiralty action, the High Court of American Samoa would be competent to hear this case. In *United States v. Canter,* 26 U.S. (1 Pet.) 511, 7 L.Ed. 242 (1828), the decision first elaborating upon the status of territorial courts, the Supreme Court upheld the validity of an admiralty decree rendered by an inferior territorial tribunal that consisted of a notary and five jurors, established by act of the governor and legislative council of Florida Territory. The Supreme Court stated that:

> [a]lthough admiralty jurisdiction can be exercised in the states in those courts only which are established in pursuance to the third article of the constitution; the same limitation does not extend to the territories. In legislating for them, congress exercises the combined powers of the general, and of a state government.

*Id.* at 546. Likewise, in *The "City of Panama",* 101 U.S. 453, 25 L.Ed. 1061 (1879), the Supreme Court held that the territorial courts of Washington Territory had jurisdiction in admiralty cases. There is, then, no constitutional barrier to the exercise of admiralty jurisdiction by the High Court of American Samoa. The question remains,

however, whether the High Court has been granted competence to hear admiralty cases. In *Canter* the act of Congress which established the territorial government of Florida granted the territorial courts the same competence as was vested in the federal district court for Kentucky. Since the Kentucky district court (an Article III court) had admiralty competence, the Supreme Court held that admiralty competence had been vested in the Florida territorial courts. In *The "City of Panama"* the act of Congress establishing the government of Washington Territory granted the same competence to the territorial courts as was exercised by the circuit and district courts of the United States. The Washington territorial courts were therefore found to have admiralty competence since such competence was exercised by the federal circuit and district courts. No statutory provision similar to those held by the Supreme Court in *Canter* and *The "City of Panama"* to have granted admiralty competence to the territorial courts of Florida and Washington exists in the case of the courts of American Samoa. Indeed, there is no federal legislation creating a court system for American Samoa. Congress has not promulgated an organic act for American Samoa, but has granted all governing authority over the territory to whomever the President chooses. The only federal legislation regarding the governance of American Samoa, 48 U.S.C. § 1661, provides in part:

> (c) Until Congress shall provide for the government of such islands, all civil, *judicial,* and military powers shall be vested in such person or persons and shall be exercised in such manner as the President of the United States shall direct. [Emphasis added.]

Pursuant to this provision, the President has delegated the administration of American Samoa to the Secretary of the Interior. Exec. Order No. 10264 (1951), *reprinted in* 48 U.S.C. § 1662 (1982). Pursuant to his powers under the aforementioned executive order, the Secretary of the Interior ap-

proved the Revised Constitution of American Samoa, which provides that "[t]he judicial power shall be vested in the High Court, the District Courts, and such other courts as may from time to time be created by law." Rev.Const.Am. Samoa art. III, § 1. The Revised Constitution also vests the legislative power in a locally elected Senate and House of Representatives, the Fono. The Fono has broad authority "to pass legislation with respect to subjects of local application, except that: (a) No such legislation may be inconsistent with ... the laws of the United States applicable in American Samoa; [or] (b) ... Conflict with treaties or international agreements of the United States." Rev.Const.Am. Samoa art. II, § 1. The Judicial Code of American Samoa was adopted by the Fono pursuant to this authority and was approved by the Secretary of the Interior. Section 3.0208 of the Judicial Code provides that the trial division of the High Court shall have jurisdiction over "admiralty and maritime matters, of which the trial division shall have both in rem and in personam jurisdiction." [13] This provision does not conflict with any federal law applicable in American Samoa or with any treaty or international agreement of the United States. Also, it is clear under the authority of *Canter* and *The "City of Panama"* that the territorial courts of American Samoa may be granted *in rem* admiralty competence without violating the United States Constitution. The only remaining question is whether the manner in which the High Court has been granted admiralty competence is proper—by act of the American Samoa legislature approved by the Secretary of the Interior. This court concludes that it is not necessary for admiralty competence to be directly and specifically conferred upon territorial courts by Congress. Rather, Congress may properly delegate plenary authority, including judicial authority, to govern a territory to the Executive. That is exactly what Congress has done in the case of American Samoa. Pursuant to

---

**13.** This provision was added in 1975 apparently as a response to *Vessel Fijian Swift v. Trial Division of The High Court of American Samoa,* 4 American Samoa Rep. 983 (1975), in which the High Court held that it lacked *in rem* admiralty jurisdiction in the absence of an express grant of such jurisdiction.

**1238**

its grant of plenary judicial power over American Samoa, the Executive has properly conferred *in rem* admiralty competence upon the High Court by approving the act of the American Samoa legislature set forth above.

There is, then, no barrier to the adjudication of plaintiff's admiralty claim in American Samoa.

## VI. CONCLUSION

For the reasons discussed above, defendants' motion to dismiss this action is hereby GRANTED.