STAR-KIST SAMOA, INC. and STAR-KIST
FOODS, INC., Appellants

v.

THE M/V CONQUEST and SECURITY
PACIFIC NATIONAL BANK, Appellees

High Court of American Samoa
Appellate Division

AP. NO. 13-85

June 25, 1986

Before MURPHY, Associate Justice, KING*, Acting
Associate Justice, HEEN**, Acting Associate
Justice, AFUOLA, Associate Judge, and VAIVAO,
Associate Judge.

Counsel:  For the Appellants, Talalelei Tulafono
          For Appellee Security Pacific, Roy J.D.
          Hall, Jr.

     This case obliges us once again to define the
jurisdiction of the High Court of American Samoa,
and again, although we feel constrained to rule as
we do, we are not happy with the result.   At issue
is a provision of the Ship Mortgage Act of 1920, 46
U.S.C. §§ 911-984 (1982), concerning foreclosure of
preferred ship mortgages.   Title 46, § 951 of the
United States Code provides:

     Upon the default of any term or condition of
     the mortgage, [a preferred ship mortgage lien]
     may be enforced by the mortgagee by suit in
     rem in admiralty.  Original jurisdiction of
     all such suits is granted to the district
     courts of the United States exclusively.

The primary question facing this Court is whether
the High Court of American Samoa has jurisdiction
under the Ship Mortgage Act to entertain appellee's
foreclosure action.

# I. Factual Background

On May 19, 1981 Conquest Fishing Corp. (Conquest), owner of the M/V Conquest of Seattle, Washington, borrowed $1,600,000 from Security Pacific National Bank of California (SPNB). Conquest properly executed and delivered to SPNB a promissory note, secured by a First Preferred Ship Mortgage executed in accordance with 46 U.S.C. § 922, and recorded by the United States Coast Guard at Long Beach, California. Conquest defaulted, and SPNB has received no payments on the note. SPNB filed an admiralty in rem action in the High Court of American Samoa to foreclose its preferred ship mortgage, and Star-Kist intervened claiming preferred maritime liens for various alleged payments for crew wages and expenses.

On December 5, 1984, the trial court denied plaintiff-appellee SPNB's motion for summary judgment, holding that the court had no jurisdiction to enforce SPNB's preferred ship mortgage, because 46 U.S.C. § 1951 grants United States District Courts exclusive jurisdiction to foreclose on such mortgages, and the Trial Division of the High Court of American Samoa is not a United States District Court. On January 10, 1985, however, on plaintiff's motion for reconsideration, the trial court reversed its original ruling. The court, per Chief Justice Robert Gardner, held instead that the trial court did have jurisdiction to entertain plaintiff's foreclosure action, that plaintiff had a valid preferred ship mortgage on the M/V Conquest in the amount of $1,600,000 plus interest, costs, and attorney fees, and that the mortgage could be foreclosed under 46 U.S.C. § 951.

The matter went to trial on February 5, 1985, and the trial court concluded that the bank had a valid first preferred mortgage, under the Ship Mortgage Act, which mortgage constituted a lien on the ship and took priority over all other claims against the ship except preferred maritime liens. The court further found that appellants Star-Kist were entitled to a preferred maritime lien in the amount of $25,065 for crew wages, separation and transportation, and unsecured liens for certain other expenses.

In this appeal, appellants are challenging the jurisdiction of the High Court of American Samoa to foreclose SPNB's preferred ship mortgage. In addition, appellants take issue with the trial

26

court's findings concerning the amounts owed to Star-Kist under their preferred maritime lien.

## II. This court lacks jurisdiction to foreclose appellee's ship mortgage.

The issue of this court's jurisdiction is unfortunately clear. Both the statutory language and the precedents of this court prevent us from entertaining SPNB's foreclosure action.

### A. Statutory Construction

The language of § 951 is clear and unambiguous: "Original jurisdiction . . . is granted to the district courts of the United States exclusively." It is beyond dispute that the courts of this territory are not article III district courts. In re Complaint of Interocean Ships, Inc., AP No. 32-84, slip op. at 5 (Nov. 19, 1985); The Vessel Pacific Princess v. Trial Division of the High Court of American Samoa, 2 A.S.R. 2d 21, 23 (1984); Meaamaile v. American Samoa, 550 F. Supp. 1227, 1236 (D. Hawaii 1982). Nor has Congress vested our courts with the jurisdiction of a non-article III district court pursuant to the "territorial exception." Northern Pipeline Co. v. Marathon Pipe Line Co., 458 U.S. 50, 64-65 (1982). Rather, the High Court of American Samoa is a territorial court of discrete and limited jurisdiction, created pursuant to articles II and IV of the United Constitution, and does not come within the plain meaning of "district courts of the United States."

Absent any clear indication of legislative intent to the contrary, the plain language of § 951 must control its construction. E.g., Ford Motor Credit Co. v. Cenance, 452 U.S. 155, 158 n.3 (1981); Letuli v. Government of American Samoa, 4 A.S.R. 830, 833 (1975). This court has examined the legislative history of the Ship Mortgage Act, and there is no clear evidence that Congress intended the language "district courts" to encompass courts of American Samoa. Appellees are correct in pointing out that the legislative history suggests that Congress was concerned with keeping the foreclosure proceedings uniform. Thus, Congress made jurisdiction exclusive in the federal district courts to prevent states courts from adjudicating these foreclosure actions. The legislative history makes no mention of the jurisdiction of American Samoa or other territories. Hearings on H.R. 8873 Before the

27

House Committee on Merchant Marine and Fisheries, 66th Cong., 1st Sess. 95 (1919) (remarks of Mr. Ira A. Campbell, Esq., September 11, 1919); see also Smith, Ship Mortgages, 47 Tul. L. Rev. 608, 611 n. 18 (1973).

Congress has demonstrated that it can integrate American Samoa into the district court system when it intends to do so, and not necessarily by extending the jurisdiction of American Samoa's courts. For example, the Ocean Dumping Act, 33 U.S.C. § 1401(g) and the Marine Mammal Protection Act, 16 U.S.C. § 1362(3) specifically provide that "the term 'district court of the United States' includes . . . in the case of American Samoa . . . the District Court of the United States for the District of Hawaii."

Even if Congress simply overlooked American Samoa and other United States territories when it passed the Ship Mortgage Act, this court cannot of its own accord reinterpret § 951 to enlarge the jurisdiction beyond that clearly spelled out in the Act. American Samoa is unique among the American territories because it is the only one that is not within the jurisdiction of a United States District Court. Congress has created District Courts in the Virgin Islands, the Canal Zone, Guam, and the Northern Mariana Islands. Decisions from these courts are appealable to United States Circuit Courts of Appeals for their respective circuits. By contrast, decisions from American Samoa are not appealable within the United States judicial system. This is a significant reason why this court should hesitate to increase its jurisdiction without explicit directive from Congress.

B. Precedent

Recent decisions of this court have consistently refused to construe federal statutes granting jurisdiction to United States district courts as granting jurisdiction to the High Court of American Samoa. For example, in The Vessel Pacific Princess v. Trial Division of the High Court of American Samoa, 2 A.S.R. 2d 21 (1984), we vacated a Trial Division order for change of venue pursuant to 28 U.S.C. § 1404(a), which provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28

We held that since the High Court of American Samoa is not a district court, it could not order a change of venue under § 1404(a). We stressed the difference between the courts of American Samoa and those of other territories, which as discussed, have been more completely integrated into the American judicial system.

We faced a similar issue of statutory interpretation in In re Complaint of Interocean Ships, Inc., AP No. 32-84, slip op. (Nov. 19, 1985). The owner of the M/V Ocean Pearl sought a limitation of liability under 46 U.S.C. § 185, which allows a vessel owner to petition a district court of the United States to limit the owner's liability to the value of the ship and to issue an injunction to halt claims in courts of other jurisdictions. We held that since the High Court of American Samoa is not a district court, vessel owners cannot take advantage of § 185 in this court. We held that Interocean Ships could limit its liability in this court under our admiralty jurisdiction conferred by A.S.C.A. § 3.0208(a)(3); however, this court has no power to issue an injunction to stay proceedings in other courts to effectuate the limitation of liability. Only Congress can grant us that power. See also In re Complaint of Interocean Ships, Inc., Ca. No. 43-84, slip op. (Apr. 21, 1986).

In short, precedents of this court preclude our jurisdiction here too. This court is simply not a United States district court. We cannot call ourselves a district court for the purpose of the Ship Mortgages Act, particularly where we have held several times recently that we cannot sua sponte enlarge our jurisdiction by statutory construction.

C.  Policy Considerations

Members of this court have consistently bemoaned our judicial "non-entity" status, e.g., In re Complaint of Interocean Ships, Inc., AP No. 32-84, slip op. (Nov. 19, 1985) (Murphy, Acting C.J., concurring); The Vessel Pacific Princess, 2 A.S.R. 2d at 24-25 (Gardner, C.J., concurring), but we find our lack of jurisdiction particularly troublesome in this case. As Chief Justice Gardner so aptly pointed out in his opinion below, policy implications strongly favor our assumption of jurisdiction in § 951 proceedings.

29

First, the intent of the Ship Mortgage Act was to promote public confidence in ship financing to stimulate investment in the shipping industry. Detroit Trust Co. v. The Thomas Barlum, 293 U.S. 21, 39-40 (1934). Congress reaffirmed this purpose when it passed amendments to the Act in 1954 to provide a remedy for enforcing mortgages on foreign flag vessels. See 1954 U.S. Code Cong. & Ad. News 2451-53. American Samoa's lack of authority to enforce preferred ship mortgages thwarts the purposes of the Act.

Second, as discussed, the legislative history of the Act indicates that the exclusive jurisdiction provision was intended to provide uniform proceedings by removing state jurisdiction over foreclosure actions. Cf., e.g., Coast Engine & Equipment vs. Sea Harvester Inc., 641 F.2d 723, 728 (9th Cir. 1981) (state procedures have no bearing on in rem admiralty proceedings under § 951 which lie within the exclusive jurisdiction of the federal courts). The legislative history does not suggest that Congress intended to preclude foreign countries or territories from foreclosing on mortgages. Chief Justice Gardner suggests that American Samoa is the only place where preferred ship mortgages cannot be enforced. There are district courts within each of the fifty states, as well as within all United States territories, commonwealths, and possessions --except American Samoa, and in foreign countries, courts may often assume jurisdiction under treaties or principles of comity.

Finally, Chief Justice Gardner noted, and we agree, that today's decision may have a severely negative impact on the fishing industry of American Samoa, and thus on our economy generally.

Despite these compelling considerations, where there is no persuasive legislative history to the contrary, this court cannot use arguments of generalized congressional intent, or policy arguments that a differently worded statute would be more fair, to overturn clear statutory language. AFL-CIO v. Donovan, 757 F.2d 330, 344 (D.C. Cir. 1985); Garcia v. Gloor, 618 F.2d 264, 268 (5th Cir. 1980), cert. denied, 449 U.S. 1113 (1981). We cannot cloak ourselves with jurisdiction under a federal statute where Congress has not seen fit to give it to us. Perhaps this was a mere oversight on Congress' part; undoubtedly they do not think of the ramifications of each of their pieces of legislation on American Samoa. On the other hand,

30

given the present unique status of the courts of this territory, and the inability of a litigant to take an appeal from these courts, Congress may have known well what it was doing by precluding our jurisdiction under § 951. At any rate, under principles of statutory construction, we must assume Congress intended what it enacted.

An operating principle in public affairs teaches that the best way to get rid of a bad situation is to make it worse. Constrained as we are by statutory language and by precedent, this court only hopes that this latest opinion in the series on our jurisdictional limitations will prompt some action to remedy the situation.

### III. The Trial Court's findings on the amounts of the liens are not clearly erroneous.

Appellants Star-Kist appeal from the trial court's ruling denying portions of their claims for preferred maritime liens. They assert that the evidence presented at trial proves that they paid for crew wages and supplies, that the monies went for these purposes, and that they thus acquired a preferred maritime lien, for which they are entitled, under 46 U.S.C. § 953, to preference even over the preferred ship mortgage. The trial court awarded the appellants $553,780, including $25,065 but disapproved $361,096 additional claimed expenses.

After a careful review of the record, this court affirms the ruling of the trial court as not clearly erroneous. We find that there was substantial evidence to support the court's findings as to the amounts of the liens, particularly given the appellants' inefficient bookkeeping methods.

This case is remanded to the trial court to determine the priority of these liens and to effect a foreclosure of the ship's mortgage under common law admiralty principles.

SO ORDERED.

---

* Honorable Samuel P. King, United States District Judge, District of Hawaii, sitting pro tem by designation of Chief Justice Gardner.

** Honorable Walter M. Heen, Associate Justice, Intermediate Court of Appeals, State of Hawaii, sitting pro tem by designation of Chief Justice Gardner.