**SAFARI AVIATION, INC. dba SAFARI PACIFIC AIRWAYS, and SAF, LTD., Plaintiffs,**

**v.**

**AIRCRAFT CASA 212, Defendant *in rem*, and VILLAGE AVIATION, INCORPORATED, Defendant.**

High Court Of American Samoa
Trial Division

CA No. 88-04

September 30, 2004

Before RICHMOND, Associate Justice, SAGAPOLUTELE, Associate Judge, and TAPOPO, Associate Judge.

Counsel: For Plaintiffs, Jeff Waller
For Defendant in rem and Defendant, Barry I. Rose, Jennifer L. Joneson, and David P. Vargas

ORDER GRANTING DEFENDANT'S MOTION TO
QUASH AIRCRAFT ARREST AND STAY FURTHER
PROCEEDINGS, AND DENYING PLAINTIFFS'
MOTION TO MAINTAIN THE STATUS QUO

## Introduction

On February 12, 2004, Plaintiffs Safari Airlines, Inc., Safari Pacific Airways, and SAF, Ltd. (together "Safari") entered into a contract with Defendant Village Aviation, Inc. ("Village") in which Village agreed to provide Federal Aviation Administration ("FAA") and Department of Transportation ("DOT") authorized aircraft, flight crew, and maintenance personnel to Safari for transportation of cargo from Pago Pago International Airport to the Manu`a Islands. According to Safari,

although Village had warranted that it was authorized by the DOT to conduct such flights, they were in fact not so authorized, preventing Safari from engaging in its air service under the agreement.

On September 17, 2004, Safari brought an in personam claim against Village alleging breach of contract, fraud, misrepresentation, and detrimental reliance for Village's alleged failure to provide the services required under the contract. Safari seeks $513,000 in contract and tort damages. Claiming that the aircraft is Village's only known asset in this jurisdiction, Safari also filed an in rem claim against Defendant Aircraft CASA 212 ("the aircraft") seeking the arrest or attachment of the aircraft under a maritime lien pursuant to this Court's jurisdiction under the Supplemental Rules for Certain Admiralty and Maritime Claims Rule C. The Court, heeding Safari's concerns regarding the mobility of the aircraft, ordered the arrest of the aircraft, her equipment, engines, propellers, cables, chains, rigging, tackle, furniture, and all other related necessaries on that same day.

On September 20, 2004, Village moved to quash the arrest of the aircraft on the basis that this court lacks admiralty subject matter jurisdiction, and moved to stay the in personam proceedings pending arbitration pursuant to the parties' contracts. On September 22, 2004, Safari responded with an alternative to the arrest. It moved to maintain the status quo by compelling the parties to arbitrate and requiring the aircraft to remain in American Samoa, without any transfer of its title, until the Court's further order.

Having had the benefit of hearings on September 20 and 23, 2004, with all parties present by counsel, and an opportunity to review the relevant case law, we now grant Village's and deny Safari's motions.

## Discussion

### I. Seizure of the Aircraft and Admiralty Jurisdiction

A.S.C.A. § 3.0208(a)(3) grants the High Court jurisdiction over "admiralty and maritime matters, of which the trial division shall have both *in rem* and *in personam* jurisdiction." *Meaamaile v. American Samoa*, 550 F. Supp. 1227 (D. Hawaii 1982); *see also Security Pacific National Bank v. The M/V Conquest*, 4 A.S.R.2d 59 (Trial Div. 1987). Section 3.0208 is consistent with the United States Constitution and federal statutes after territorial competence was properly conferred by the Secretary of the Interior's approval of the statute. *Meaamaile*, 550 F. Supp. at 1237-38.

Under Rule C(1) of the Supplemental Rules for Certain Admiralty and Maritime Claims, an action in rem may be brought to enforce any

maritime lien. Subsection C(3) holds that "if the conditions for an action *in rem* appear to exist, an order so stating and authorizing a warrant for the arrest of the vessel or other property that is the subject of the action shall issue and be delivered to the clerk who shall prepare the warrant."

As Village notes, however, while this Court may have admiralty jurisdiction over maritime vessels pursuant to Rule C, case law indicates that an airplane under the circumstances of this case does not fall within the ambit of our maritime authority.

■ In *Executive Jet Aviation, Inc, v. Cleveland*, in which an aircraft crashed into the navigable waters of Lake Erie after striking a flock of seagulls, the plaintiffs invoked admiralty jurisdiction in an action against the defendants for negligent failure to keep the runway free of birds. 409 U.S. 249, 250 (1972). The Supreme Court noted that in a time in which maritime accidents were conceived to relate only to maritime vessels, the traditional method of analyzing whether a tort invoked maritime jurisdiction depended on whether the locality of the wrong occurred on land or navigable waters. *Id.* at 253.[1] In recognizing the difficulty with the application of this test to aircraft, the Court reasoned that a court must also consider whether "the wrong bear[s] a significant relationship to maritime activity." *Id.* at 268.

In applying this additional standard in the context of tort claims arising from flights between points within the continental United States, the Court reasoned that:

> [t]he law of admiralty has evolved over many centuries, designed and molded to handle problems of vessels relegated to ply the waterways of the world . . . Rules and concepts such as these are wholly alien to air commerce, whose vehicles operate in a totally different element, unhindered by geographical boundaries and exempt from the navigational rules of the maritime road. The matters with which admiralty is concerned have no conceivable bearing on the operation of aircraft, whether over land or water.

*Id.* at 270.

■ Applying the test here, the aircraft fails to fall under the law of admiralty. First, under the locality rule, a tort occurs where the negligent

---

[1] *See The Plymouth*, 3 Wall. 20, 35, 36 (1866) (stating that "[t]he wrong and injury complained of must have been committed wholly upon the high seas or navigable waters, or, at least, the substance and consummation of the same must have taken place upon these waters to be within the admiralty jurisdiction.").

or intentional act takes effect, not where the act occurred. *Id.* at 266. Thus, in the context of intentional torts, such as fraud and misrepresentation, the tort must have an effect on navigable waters to be within admiralty jurisdiction. *See, e.g., Wiedemann & Fransen, A.P.L.C. v. Hollywood Marine, Inc.*, 811 F.2d 864, 866 (5th Cir. 1987). Here, the tort of fraud and misrepresentation relates entirely to the contractual disputes surrounding the parties' air services agreement, having the effect of grounding the airplane in Tutuila and causing financial damage to Safari. In other words, no tortious impact has been alleged on navigable waters.

Additionally, this case does not involve activity with some relationship to maritime commerce. It is true that the *Executive Jet* Court left open whether an aviation tort case can, under any circumstances, bear a sufficient relationship to traditional maritime activity, noting that "[i]t could be argued, for instance, that if a plane flying from New York to London crashed in the mid-Atlantic, there would be admiralty jurisdiction over resulting tort claims even absent a specific statute." *Id.* at 271. However, that the alleged tort in this case fortuitously involved inter-island flight, as opposed to the inter-continental flight in *Executive Jet*, is of no consequence to the fact that the tort involved has no bearing on "maritime" activities. *See, e.g., American Home Assur. Co. v. United States*, 389 F. Supp. 657, 658 (D.C. Pa. 1975) (where, applying *Executive Jet*, the court found no maritime jurisdiction in a plane crash between New Jersey and Block Island merely because the island was separated from the mainland.).

In light of the fact that this matter emerges out of a contract dispute relating to air transport services alone, it follows, then, that the third factor considered in evaluating maritime jurisdiction, that the tort must have a potential impact on maritime commerce, is inapplicable in this case. *Sisson v. Ruby*, 497 U.S. 358 (1990).

Safari provides several cases to advance the theory that this court has jurisdiction over the aircraft in question under its admiralty jurisdiction. First, Safari points to *United States v. One 1978 Piper Navajo PA-31 Aircraft*, 748 F.2d 316, 317 (5th Cir. 1984), in which the defendant's aircraft was seized by officers of the United States Customs Service pursuant to Rule C(3) of the Supplemental Rules for Certain Admiralty and Maritime Claims. There, however, the district court issued the arrest warrant after the government alleged that the aircraft was used in connection with the transportation, importation, sale, possession, and concealment of contraband, and was thus the subject of forfeiture under 21 U.S.C. § 881. *Id.* Whereas section 881(b) specifically authorizes the seizure of property subject to civil forfeiture according to the process set forth under Supplemental Rule C, this private action is not supported by similar statutory authorization. Therefore, the case is not pertinent to

Safari's action. *See* 21 U.S.C. § 881(b). For the same reason, Safari's case, *United States v. One Caribou Aircraft Registration No. N-1017-H*, 557 F. Supp. 379, cited at hearing, is inapposite.

Likewise, Safari's reference to *Historic Aircraft Recovery Corp. v. Wrecked and Abandoned Voight*, 2003 WL 21448906 (D. Me. 2003) does not convince us otherwise. In that unpublished memorandum the plaintiff sought the arrest of a sunken aircraft that had collided and crashed into the bottom of Sebago Lake in Maine during a World War II training mission. *See also Recovery Corp. v. Wrecked and Abandoned Voight*, 294 F. Supp. 2d 132, 133 (D. Me. 2003). The district court judge temporarily authorized the arrest of the craft pending a hearing on the matter. However, not only is this matter not a salvage case, but importantly, the *Recovery Corp.* court later dismissed the case in its published opinion after determining it lacked admiralty jurisdiction over the plane (1) because Sebago Lake was a lake entirely within the boundaries of Maine, and was not a "navigable waterway" under the locality test; and (2) because an aircraft collision did not fall within "traditional maritime activity" under *Executive Jet*. 294 F. Supp. 2d at 135-36.

## II. Alternative Seizure of the Aircraft

Safari advances an argument that if we hold that this action does not qualify as one in admiralty and maritime, we should somehow keep the aircraft here, and prevent any transfer of its title, pending outcome of the arbitration process mandated in the parties' contract. Safari seems to think that we can maintain this status of the aircraft by exercising equity authority. However, Safari does not cite any precedent[2] in support of this argument other than an argument that is tantamount to issuance of a preliminary injunction or prejudgment attachment. Both of these remedies are invoked under well-defined processes, but Safari has not yet initiated either one in a proper manner.

Safari has also requested we compel the parties to arbitrate pursuant to their contracts, as an extension of its overture to maintain the status quo by keeping the aircraft here. We see no reason to order the parties to arbitration. Contractually, Safari may initiate the arbitration process to resolve its differences with Village, and Village must participate in this process.

---

[2] Safari suggested that there is local precedent for arrest or detention of an aircraft in earlier actions involving declining or defunct airlines. However, it has not provided any citation to specific action invoking an aircraft seizure, whether under our admiralty and maritime jurisdiction or any other authority, and we have not found any such precedent in our research.

## Order

1. Village's motion to quash the aircraft arrest and stay further proceedings is granted. The arrest of the aircraft is quashed, and the in personam proceedings are stayed pending the outcome of arbitration pursuant to the parties' contracts, and the Court's further order. We defer any action of Village's request for attorney's fees while the action is stayed.

2. Safari's motion to maintain the status quo by compelling the contractual arbitration and requiring the aircraft to remain in American Samoa, without any transfer of its title, until further Court order is denied.

It is so ordered.