# UNITED STATES v. STANDARD OIL CO. OF CALIFORNIA

No. 71–527. Decided January 24, 1972

PER CURIAM.

The United States sought injunctive relief against appellee, alleging that appellee combined and conspired to restrain and monopolize the distribution and sale of petroleum products in American Samoa, in violation of § 3 of the Sherman Act, 26 Stat. 209, as amended, 15 U. S. C. § 3.[1] The District Court for the Northern District of California dismissed the complaint for lack of jurisdiction on the ground that American Samoa is not a "Territory of the United States" within the meaning of § 3. 330 F. Supp. 371 (1971). The United States has appealed pursuant to the Expediting Act, 32 Stat. 823, as amended, 15 U. S. C. § 29. We note probable jurisdiction and reverse.

American Samoa is a group of seven small islands in the South Pacific. Treaties with Great Britain and Ger-

---

[1] Section 3 provides in pertinent part:

"Every contract, combination in form of trust or otherwise, or conspiracy, in restraint of trade or commerce in any Territory of the United States or of the District of Columbia, or in restraint of trade or commerce between any such Territory and another, or between any such Territory or Territories and any State or States or the District of Columbia, or with foreign nations, or between the District of Columbia and any State or States or foreign nations, is declared illegal."

many recognize the claims of the United States to the islands. 31 Stat. 1878, T. S. No. 314. By Act of Congress, 45 Stat. 1253, 48 U. S. C. § 1661, powers to govern the islands are vested in the President, who has delegated the authority to the Secretary of the Interior, Exec. Order No. 10264, 16 Fed. Reg. 6417.

The District Court distinguished between "organized" and other Territories, holding that only the former are Territories within § 3 and that American Samoa is not "organized." [2]

Section 3 extends to "any Territory of the United States." Congress, of course, did not have Samoa in mind when it enacted the Sherman Act. Yet, as this Court pointed out in holding that Puerto Rico is within the coverage of § 3, "that is not enough. It is necessary to go further and to say that if the acquisition of that insular dependency had been foreseen, Congress would have so varied its comprehensive language as to exclude it from the operation of the act." *Puerto Rico* v. *Shell Co.*, 302 U. S. 253, 257 (1937). There is no more reason to think that Congress would have done so for Samoa than for Puerto Rico. The Court stressed in *Puerto Rico* that Congress intended by § 3 "to exert all the power it possessed in respect of the subject matter—trade and commerce," and the Court therefore found it

> "equally reasonable to conclude that Congress intended to include all territories to which its powers might extend. The same reason which requires the utmost liberality of construction in respect of the word 'trade,' also requires the same degree of liberality of construction in respect of the word 'territory'; and we hold, accordingly, that the word 'territory' was used in its most comprehensive sense, as em-

[2] An "organized" Territory is one in which a civil government has been established by an Organic Act of Congress.

bracing all organized territories, whether incorporated into the United States or not, including Puerto Rico." *Id.*, at 259.

There is no question that Congress has power to apply the Sherman Act to Samoa. Because "Congress intended to include all Territories to which its powers might extend," it follows that Samoa is a "Territory" within the meaning of § 3. We are not persuaded by the District Court's distinction, for purposes of § 3, between organized and unorganized Territories. The Court held in *Puerto Rico* that " 'territory' was used in its most comprehensive sense"; the Court's further reference to "organized territories" was simply an application of that construction to the facts of the case, for Puerto Rico was an organized Territory, as well as a response to the contention that Puerto Rico could not be included within § 3 because it was not an "incorporated" Territory. We discern no reason, and appellee suggests none, why Congress would have wished to exclude unorganized Territories from the coverage of § 3.

*Reversed.*