**HAVILA MAGALEI PURCELL, DUKE PURCELL, and ISLAND BUILDERS, ARCHITECTS, CONSULTANTS & ENGINEERS, Plaintiffs,**

**v.**

**SEUGOGO H.B. SCHIRMER, Director, Port Administration, W.T. (BILL) ANDREW, Senior Engineer, Port Administration, FULTON HOGAN HOLDINGS, LTD. (a New Zealand Corporation), FULTON HOGAN, LTD., (an American Samoan Corporation), MARK KEANE, Project Manager, Defendants.**

High Court of American Samoa
Trial Division

CA No. 67-02

December 23, 2002

Before RICHMOND, Associate Justice, LOGOAI, Chief Associate Judge, and SAGAPOLUTELE, Associate Judge.

Counsel: For Plaintiffs, Paul F. Miller
For Defendants Seugogo H.B. Schirmer and W.T. (Bill) Andrew, Fiti A. Sunia, Attorney General
For Defendants Fulton Hogan Holdings, Ltd. Fulton Hogan, Ltd., Jennifer L. Joneson

## ORDER GRANTING TIME TO FILE AMENDED COMPLAINT CORRECTING PLEADING DEFICIENCIES

Before us is the motion of defendants Seugogo H.B. Schirmer ("Seugogo") and W.T. (Bill) Andrew ("Andrew") to dismiss for failure to state a claim under T.C.R.C.P. 12(b)(6). Defendants Fulton Hogan Holdings, Ltd., Fulton Hogan, Ltd., and Mark Keane ("Keane"), later joined in the motion.[1] The legal issues involved are novel, and present important questions concerning the status of certain civil rights in the Territory.

## Background

Plaintiffs Havila Magalei Purcell and Duke Purcell are United States Nationals and residents of American Samoa who own plaintiff Island Builders Architects, Consultants & Engineers.[2] They are also self-described "minority contractors." Seugogo and Andrew are both employees of the American Samoa Government ("ASG") in ASG's Department of Port Administration ("DPA"). Seugogo is the Director of DPA. Fulton Hogan Holdings, Ltd., a New Zealand Corporation, and Fulton Hogan, Ltd., an American Samoa Corporation, are both engaged in business in the Territory.[3] Keane is an agent of Fulton Hogan.

For purposes of this motion, we must assume the factual allegations to be true.[4] The dispute arose out of a contract awarded by ASG to Fulton Hogan for a DPA capital improvement project at the Pago Pago International Airport. The plaintiffs claim that they were unlawfully prevented from bidding on portions of the contract. They brought suit against the defendants, claiming the defendants acted as part of a civil conspiracy to deny the plaintiffs their constitutionally protected rights to make and enforce contracts on account of their race and sex as codified under 42 U.S.C.A. § 1981.[5] They also brought suit against Seugogo and

---

[1] We will refer to all defendants collectively as "the defendants."

[2] We will refer to all plaintiffs collectively as "the plaintiffs."

[3] We will refer to them collectively as "Fulton Hogan."

[4] While Seugogo and Andrew argue that we do not have jurisdiction in this case, their motion is one for failure to state a claim under T.C.R.C.P. 12(b)(6). Lack of jurisdiction is governed by T.C.R.C.P. 12(b)(1). To be fair, there is some overlap between jurisdiction and a right of action in this case. "Where the defendant's challenge to the court's jurisdiction is also a challenge to the existence of a [right] of action, the proper course of action . . . is to find that jurisdiction exists and deal with the objections as a direct attack on the merits of the plaintiff's case." *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. 1981). This also benefits a plaintiff in that under the law of 12(b)(6), we must consider the allegations in the complaint as true. *Id.* at 412. We apply this standard now because we do have jurisdiction to hear this suit. *See* Part II.B, *infra*.

[5] Section 1981, entitled Equal rights under the law, provides in relevant

279

Andrew individually, acting under color of law as employees of ASG, alleging the same deprivations of rights. They assert that our jurisdiction over the suit is found in A.S.C.A. § 3.0208. The defendants counter that the plaintiffs do not have a legally cognizable claim or, at the very least, that they have not properly pled the claim of civil conspiracy.

## Discussion

With that relatively simple background, we proceed to the wholly complex question of whether § 1981 is applicable in American Samoa and, if so, to what extent.

## A. Legal Framework

The plaintiffs and the defendants have misconstrued the differences between subject matter jurisdiction, rights of action, and causes of action as these terms relate to this case. The plaintiffs began their pleadings by noting that their action was brought pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971); it seems they were relying on *Bivens* as granting them the right of action for their suit. The defendants counter that *Bivens* "recognized a new basis of federal court jurisdiction, namely, a federal private cause of action that can arise under the Fourth Amendment." Therefore, because the plaintiff's allegations did not implicate the Fourth Amendment, and because a *Bivens* claim is strictly a cause of action available in the federal courts, they argue we lack jurisdiction to hear this suit. Neither contention is exactly right.

 Subject matter jurisdiction, rights of actions, and causes of action are three very different concepts. Subject matter jurisdiction speaks to a

part:
> (a) **Statement of equal rights**
> All person within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens . . .
> (b) **"Make and enforce contracts" defined**
> For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.
> (c) **Protection against impairment**
> The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

court's "*power* to adjudicate a case." *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 89 (1998) (emphasis in original); *see also Merrell Dow Pharms. v. Thompson*, 478 U.S. 804, 807 (1986). Without jurisdiction, a court "cannot proceed at all in any cause." *Steel Co.*, 523 U.S. at 94 (quoting *Ex parte McCardle*, 7 Wall 506, 514 (1869)). Whether a court has the power to hear a case is different from whether a plaintiff has a right to bring the case or is claiming a legally recognized right. *See Steel Co.*, 523 U.S. at 89 (citing *Bell v. Hood*, 327 U.S. 678, 682 (1946)) (a court can have subject matter jurisdiction over a claim yet not be able to grant the relief sought because no right or cause of action exists).

 Courts often confuse the terms "right of action" and "cause of action." *See generally Davis v. Passman*, 442 U.S. 228, 237-44 (1979) (discussing the various applications of a "cause of action"); 1 AM. JUR. 2D *Actions* § 2 (2d ed. 1994). A right of action grants a plaintiff "the right to pursue a judicial remedy." 1 AM. JUR. 2D *Actions* § 2; *see also Davis*, 442 U.S. at 239 (right of action "is employed specifically to determine who may judicially enforce the statutory [or Constitutional] rights and obligations."); *Bivens*, 403 U.S. at 396 (finding United States Constitution implicitly allows citizen to bring suit for violations of Fourth Amendment rights); 42 U.S.C.A. § 1983 (statutory right of action for deprivation of constitutional rights under color of law). On the other hand, "a cause of action is based on the substantive law of the legal liability." 1 AM. JUR. 2D *Actions* § 2. That is, a cause of action refers to "recognized legal rights upon which a litigant bases his claim for relief." *Davis*, 442 U.S. at 237 (citing *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 693 (1949)).

B. Subject Matter Jurisdiction

As noted, simply because a right of action may exist does not mean we automatically have jurisdiction to hear the case. We must first make that determination. *See supra* note 4.

 There is a substantial amount of case law, at the federal level, discussing the issue of subject matter jurisdiction in civil rights cases. Jurisdiction to hear suits arising under § 1981 (and other civil rights statutes) is usually based on 28 U.S.C.A. §§ 1343, 1331. *See Tripati v. U.S.I.N.S.*, 784 F.2d 345, 346 n.1 (10th Cir. 1986); *Mummelthie v. Mason City, Iowa*, 873 F. Supp. 1293, 1304 (N.D. Iowa 1995). That is not to say that state or territorial courts cannot entertain these types of suits. Federal courts do not have exclusive jurisdiction in this area. Instead, they have concurrent jurisdiction. *See DeHorney v. Bank of Am. Nat. Trust & Sav. Ass'n*, 879 F.2d 459, 463 (9th Cir. 1989); 15 AM. JUR. 2D *Civil Rights* § 33 (2d ed. 1994); *see also Maine v. Thiboutot*, 448

U.S. 1, 3 n.1 (1980) (state courts can hear § 1983 claims). Therefore, we must evaluate our own jurisdictional grant to determine whether the High Court is a proper forum for § 1981 claims.

 Unlike federal courts, the Trial Division of the High Court is not a court of limited jurisdiction; rather, it is "a court of *general jurisdiction* with the power to hear *any matter* not otherwise provided by statute." A.S.C.A. § 3.0208 (emphasis added). This broad grant expanding our jurisdiction was added in 1979. P.L. 16-28 (1979). The statute was passed by the Legislature as a valid exercise of its power to define the High Court's jurisdiction. *See generally Swift v. Trial Division*, 4 A.S.R. 983, 986-88 (1975) (noting that Congress has delegated, through the Executive, to our Legislature the power to define our jurisdiction as long as it is consistent with the laws and treaties of the United States and American Samoa); *Meaamaile v. Am. Samoa*, 550 F. Supp. 1227, 1235-36 (D. Haw. 1982). While it may have been a close question before that amendment, we have no doubt that § 3.0208 clearly grants us the power, *i.e.* the jurisdiction, now to hear claims brought under § 1981. *See Meaamaile*, 550 F. Supp. at 1235-36 (assuming High Court can entertain § 1981 suits).

C. Right of Action under § 1981

Having determined we have jurisdiction, we must decide whether § 1981 creates a private right of action so that the plaintiffs may enforce their claim.

*Bivens* arose out of a citizen suit against federal agents for violations of Bivens' constitutional rights under the Fourth Amendment of the United States Constitution. Congress had created a right of action for such a suit arising against state (and territorial) agents, *see* 42 U.S.C.A. § 1983, but had not created one for suits against federal agents. *Bivens*, 403 U.S. at 429 (Black, J., dissenting). The Court in *Bivens* found that notwithstanding the lack of an explicit grant by Congress, the United States Constitution provided for an implied right of action in federal courts to enforce Fourth Amendment violations by federal agents.[6] *Bivens*, 403 U.S. at 400-02 (Harlan, J., concurring).

---

[6] Implied rights of actions have also been found under the United States Constitution, Fifth Amendment, *Davis v. Passman*, 442 U.S. 228, and Eighth Amendment, *Carlson v. Green*, 446 U.S. 13 (1980). *See Bush v. Lucas*, 426 U.S. 367, 374 (1983) (noting that in some cases, the United States "Constitution itself supports a private [right] of action for damages against a federal official").

Defendants are correct, then, that *Bivens* has no application to this case. A *Bivens* action is applicable only in federal courts. The plaintiffs' reference to *Bivens* was thus misplaced; but more importantly, it was unnecessary. Section 1981 itself creates a right of action, explicitly created by Congress, for the enforcement of certain civil rights violations. *See generally Patterson v. McLean Credit Union*, 491 U.S. 164 (1989); *Runyon v. McCrary*, 427 U.S. 160 (1976); *Giles v. Equal Employment Opportunity Comm'n*, 520 F. Supp. 1198, 1199 (1981) (Section 1981 "provide[s] a remedy in cases in which jurisdiction is present.").

 Furthermore, on its face, § 1981 applies to United States Territories. 42 U.S.C. § 1981 ("All persons . . . shall have the same right in every State and *Territory* . . . ."). We have no doubt that, even though § 1981 was passed before American Samoa became a Territory of the United States, by using such clear language, Congress intended that § 1981 apply to this Territory. The word "Territory" in a statute is presumed to apply to American Samoa unless, had "the acquisition of that insular dependency . . . been foreseen, Congress would have so varied its comprehensive language as to exclude it from the operation of the act." *United States v. Standard Oil Co.*, 404 U.S. 558, 559 (1972); *see also Ferstle v. Am. Samoa Gov't*, 4 A.S.R.2d 160, 162-63 (Trial Div. 1987) (Section 1983, on its face, applies to American Samoa); *Tuivai v. Suiava*, 2 A.S.R.2d 35, 36 (Trial Div. 1984) (same); *Fleming v. Dep't of Pub. Safety*, 837 F.2d 401, 404-05 (9th cir. 1988) (Sections 1981 and 1983 apply to Northern Mariana Islands); *Bunyan v. Camacho*, 770 F.2d 773 (9th Cir. 1985) (implying § 1983 applies to Territory of Guam). *But see Temengil v. Trust Territory of Pac. Islands*, 881 F.2d 647, 651-52 (9th Cir. 1989) (Sections 1981 and 1983 do not apply to the Trust Territory of the Pacific Islands).

 This right of action clearly extends to private actors. *Patterson*, 491 U.S. at 171-75; *Runyon*, 427 U.S. at 168-75. The portion of the suit against Fulton Hogan and Keane is properly before us. Similarly, § 1981 creates a right of action for lawsuits against state actors. *See Fed'n of African Am.. Contractors v. Oakland*, 96 F.3d 1204, 1210-14 (9th Cir. 1996).[7] Therefore, the portion of this suit against Seugogo and Andrew,

---

[7] In *Jett v. Dallas Ind. School Dist*, 491 U.S. 701 (1989), the Supreme Court held that while state actors could violate § 1981, it did not create a right of action to sue; instead, § 1983 created the exclusive right of action in that situation. *Id.* at 731. Subsequently, § 1981 was amended to add subsections (b) and (c). Civil Rights Act of 1991, Pub.L. 102-166 § 101. In effect, the new amendments overruled this holding of *Jett. See Fed'n*, 96 F.3d at 1210-14 (finding that 1991 amendment to § 1981 created right of action against state actors); *Dennis v. County of Fairfax*, 55 F.3d 151,

acting under color of law, is also properly before us.

## D. Cause of Action

We now come to the crux of this case—what is the plaintiffs' cause of action? That is, do they have a legally recognizable claim in American Samoa for the conduct they now complain was committed?

■ Section 1981 protects rights arising both under the Thirteenth and Fourteenth Amendments of the United States Constitution.[8] *See Jett*, 491 U.S. at 722 (plurality opinion); *Patterson*, 491 U.S. at 197-99 (Brennan, J. concurring and dissenting in part); *Runyon*, 427 U.S. at 190 (Stevens, J., concurring); *Vietnamese, Etc. v. Knights of K.K.K.*, 518 F. Supp. 993, 1008 (S.D. Tex. 1981). It was passed, in part, "under Congress' Thirteenth Amendment power to identify and legislate against the badges and incidents of slavery." *Patterson*, 491 U.S. at 197 (Brennan, J. concurring in part and dissenting in part). It also derived, however, from the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and was "intended to secure 'the full and equal benefit of all laws and proceedings for the security of persons and property . . . .'" *McLaughlin v. Florida*, 379 U.S. 184, 193 (1964); *see also Runyon*, 427 U.S. at 195-205 (White, J., dissenting) (arguing § 1981 was passed *solely* under Congress' Fourteenth Amendment powers).

The problem facing us is that this court has never determined whether or not the Thirteenth Amendment of the United States Constitution, its implementing federal law, and the protections they afford, have been incorporated into the law of American Samoa. Additionally, we have said that "[t]he extent to which the equal protection clause of the Fourteenth Amendment applies in the territory is unclear . . . ." *Macomber v. Am. Samoa Gov't*, 12 A.S.R.2d 29, 30 (Trial Div. 1989);

---

156 n.1 (4th Cir. 1995); *Philippeaux v. N. Cent. Bronx Hosp.*, 871 F. Supp 640, 653-56 (S.D.N.Y. 1994). *Jett* also held that § 1983 provides the exclusive right of action for suits against municipalities. The appeals courts are split as to whether the amendments overruled this aspect of *Jett. Compare Fed'n*, 96 F.3d at 1214-15, *with Philippeaux*, 871 F. Supp at 654-56. This issue is not before us and thus we need not resolve it.

[8] The Thirteenth Amendment states in part, "Neither slavery nor involuntary servitude except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction."

The Fourteenth Amendment states in part, "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."

*see also Banks v. Am. Samoa Gov't*, 4 A.S.R.2d 113, 123-28 (Trial Div. 1987). The resolution of these uncertainties is paramount to the outcome of the decision on the present motion; if the rights are incorporated, then § 1981 is enforceable in American Samoa and the plaintiffs have claimed a valid cause of action.

■ The test for incorporation has been stated by this Court as follows: "the federal Constitution applies here only insofar as its tenets restate 'those fundamental limitations in favor of personal rights' that are 'the basis of all free government . . . .'" *Am. Samoa Gov't v. Falefatu*, 17 A.S.R.2d 114, 129 n.9 (Trial Div. 1990) (quoting *Dorr v. United States*, 195 U.S. 138, 146 (1922)). It has been stated somewhat differently at the federal appellate level: "whether the claimed right is one which would be impractical or anomalous in [the Territory]." *Wabol v. Villacrusis*, 958 F.2d 1450, 1461 (9th Cir. 1990); *see also King v. Morton*, 520 F.2d 1140, 1147 (D.C. Cir. 1975); STANLEY K. LAUGHLIN, JR., THE LAW OF UNITED STATES TERRITORIES AND AFFILIATED JURISDICTIONS §§ 10.5, 10.7 (1st ed. 1995) (commending this approach). We will address both tests.

> It can hardly be doubted that the prohibition against slavery, and against its badges and incidents, is a fundamental right of any free society. In enforcing the Thirteenth Amendment, [Congress] undertook to wipe out these burdens and disabilities, the necessary incidents of slavery, constituting its substance and visible form; and to secure to all citizens of every race and color, and without regard to previous servitude, those *fundamental rights* which are the essence of civil freedom, namely: the same right to make and enforce contracts, to sue, be parties, [and] give evidence . . . as is enjoyed by white citizens . . . [In passing § 1981, Congress acted] only to declare and vindicate those *fundamental rights* which appertain to the essence of citizenship, and the enjoyment or deprivation of which constitutes the essential distinction between freedom and slavery."

*Civil Rights Cases*, 109 U.S. 3, 22 (1883) (emphasis added); *see also Jones v. Alfred H. Mayor Co.*, 392 U.S. 409, 440-41 (1968). Given that these rights are so fundamental, it is no surprise that they are safeguarded by our own Constitution. AM. SAMOA REV. CONST. art. I, § 10 ("Neither slavery, nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist in American Samoa."); *see also Banks*, 4 A.S.R.2d at 125, n.5 (when determining whether or not a right is fundamental, it is relevant whether or not our own Constitution contains a similar clause).

As for the interplay of the Equal Protection Clause, we see no reason

285

why the fundamental rights arising out of the Thirteenth Amendment would be any less fundamental if they derived from the Fourteenth Amendment. It cannot be said, for example, that the rights under § 1981 are incorporated into American Samoa only to the extent that they abolish the incidents and badges of slavery but not to the extent that they provide for the equal protection of laws. It is a distinction without a difference.

Furthermore, it would not be impractical or anomalous to apply these rights in the Territory. Section 1981 speaks to intentional or purposeful racial discrimination. *Albert v. Carovano*, 851 F.2d 561, 571-72 (2d Cir. 1988) *and cases cited*. No part of the laws or culture of American Samoa promotes or relies on racial classifications in terms of employment, contracts, or access to the courts—all of which fall under the ambit of § 1981. *Banks* is not inapposite.

In *Banks*, albeit in *dicta*, this Court upheld the residential hiring preference, codified in A.S.C.A. § 7.0205, against constitutional attack. We noted that to the extent that the preferences conflicted with the Equal Protection Clause, those rights were not incorporated into American Samoa. *Banks*, 4 A.S.R.2d at 121-28. This Court was careful to state, however, that the "American Samoa preference is not a racial classification at all . . . . Although the preference has an obvious racial effect . . . [it] is essentially a preference for permanent residents rather than for ethnic Samoans . . . ." *Id.* at 128; *see also* A.S.C.A. 12.0210 (Local Preference statute for government contracts). In making that determination, the Court relied in part on Appendix A to A.S.A.C. § 4.1108, the implementing regulations for A.S.C.A. § 7.0205. The Appendix, still in force, contains a policy statement that states, *inter alia*, "[i]t is the policy of the ASG to provide and promote equal opportunity in employment to people without discrimination because of *race, creed, color,* [or] *national origin* . . . ." Appendix A to A.S.A.C. § 4.1108 (emphasis added); *see also* A.S.A.C. §§ 4.1101-.1108. Clearly this is evidence that some of the rights encompassed by § 1981 have already been embraced by ASG. Moreover, it is evidence that applying § 1981 to American Samoa, because it protects fundamental rights arising out of the Thirteenth and Fourteenth Amendments of the United States Constitution, would not be inconsistent or anomalous with the laws and customs of American Samoa.[9]

---

[9] Nothing in this opinion should be interpreted as overruling or altering at all the current state of our land alienation laws. We are cognizant that 42 U.S.C. § 1982, which took root also from the Thirteenth and Fourteenth Amendments, seemingly conflicts with the explicit racial requirements for land ownership codified in A.S.C.A. §§ 37.0201-.0230. While the right to land ownership may be a fundamental right, Congress has

 The defendants are right that judicial review of a procurement decision lies in the first instance before the Office of the Administrative Law Judge. *See* A.S.C.A. § 4.0604(e)-(g); *see also* A.S.A.C. § 10.0282. But the plaintiffs' complaint goes beyond allegations of noncompliance with administrative regulations; the complaint alleges intentional racial discrimination, a claim that does not belong at the administrative level. Therefore, we conclude that § 1981 creates a cause of action enforceable here in American Samoa, for claims of intentional racial discrimination. Section 1981 does not, however, apply to claims based on sex discrimination. *See Runyon*, 427 U.S. at 167; *Taylor v. Shell Offshore, Inc.*, 700 F. Supp 314, 315 (M.D. La. 1988). To the extent that any of the claims here are based on sexual discrimination, they are dismissed.

E. Pleadings

 Notwithstanding the foregoing discussion, the plaintiffs' pleadings are still deficient. For actions under § 1981, a plaintiff must specifically plead "intentional discrimination on account of race," otherwise known as "racial animus." *Evans v. McKay*, 869 F.2d 1341, 1344, 1345 n.3 (9th Cir. 1989). While the plaintiffs have alleged intentional discrimination, they have not pleaded any facts that would tend to show the actions by the defendants were racially motivated. *See Yusuf v. Vasasr College*, 827 F. Supp. 952, 954-56 (S.D.N.Y. 1993) (causal link between defendant's conduct and plaintiff's race too conclusory). Overt acts coupled with some direct evidence, such as, for example, racial slurs, would suffice. *Evans*, 869 F.2d at 1345. The plaintiffs have not pled any such direct evidence.

 Furthermore, the plaintiffs' claim that the defendants conspired to deprive them of their constitutional rights is likewise defective. Claims of conspiracy to deprive someone of their rights are properly brought under 42 U.S.C. § 1985(3).[10]

---

"carefully preserve[d] for the Samoan people the exclusive right to determine by local statute how their culture and land tenure system will be regulated." *Craddick Dev., Inc. v. Craddick*, 2 A.S.R.3d 20, 39 (App. Div. 1998) (Ward, J., concurring). At the very least, incorporation of this specific fundamental right would be impractical and anomalous in American Samoa. *See Wabol*, 958 F.2d at 1461-62 (applying analysis and upholding land alienation restrictions of the Northern Mariana Islands).

[10] Section 1985(3) prohibits, "two or more persons in any State or Territory [from] conspir[ing] . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the

[A] complaint must allege that the defendants did (1) 'conspire . . .' (2) 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.' It must then assert that one or more of the conspirators (3) did, or caused to be done, 'any act in furtherance of the object of [the] conspiracy,' whereby another was (4a) 'injured in his person or property' or (4b) 'deprived of having and exercising any right or privilege of a citizen of the United States.'

*Andrews v. Fowler*, 98 F.3d 1069, 1079 (8th Cir. 1996) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 101-02 (1971)).

 Nonetheless, in order to "facilitate a proper decision on the merits of the case," *Thomsen v. Bank of Haw.*, 28 A.S.R.2d 86, 87 (Trial Div. 1995), or at the very least, to assure that dismissal is based on the failed factual allegations and not inartful pleading, we are allowing the plaintiffs leave to amend the pleadings to conform with this opinion. T.C.R.C.P. 15(a) (party may amend pleadings by leave of court when justice so requires).

## Order

The plaintiffs shall have 30 days to file an amended complaint that corrects the deficiencies in the present complaint. If the plaintiffs fail to adequately correct the deficiencies in the complaint within this time period, the motion to dismiss will be granted.

It is so ordered.

---

laws[.]" This section creates a right of action to enforce existing federal laws, such as § 1981. *See Great Am. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 383 (1979) (Stevens, J., concurring) (private conspiracies to deprive individuals of their right to be free from the badges of slavery are actionable under § 1985(3)); *Nieto v. United Auto Workers Local 598*, 672 F. Supp. 987, 991-92 (E.D. Mich. 1987).